```
 1                UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3
 4   COMCAST IP HOLDINGS I LLC    :   CA NO. 12-205-RGA
 5                                :   July 19, 2012
 6            Plaintiff,          :
 7                                :   11:00 O'clock a.m.
 8   v.                           :
 9                                :
10   SPRINT COMMUNICATIONS        :
11   COMPANY LP, ET AL            :
12                                :
13            Defendants,         :
14   ............................
15
16
17          TRANSCRIPT OF RULE 16 CONFERENCE
18        BEFORE THE HONORABLE RICHARD G. ANDREWS
19              UNITED STATES DISTRICT JUDGE
20
21
22   APPEARANCES:
23
24   For Plaintiff:     CONNOLLY, BOVE, LODGE & HUTZ
25                      BY:  ARTHUR G. CONNOLLY, III, ESQ
```

```
 1                              -and-
 2                         DAVIS POLK LLP
 3                         BY:  MATTHEW B. LEHR, ESQ
 4
 5    For Defendants:      MORRIS JAMES LLP
 6                         BY:  RICHARD K. HERRMANN, ESQ
 7                              -and-
 8                         BY:  BART A. STARR, ESQ
 9                         BY:  ROBERT H. RECKERS, ESQ
10                         BY:  AARON E. HANKEL, ESQ
11
12
13
14
15
16    Court Reporter:           LEONARD A. DIBBS
17                              Official Court Reporter
18
19
20
21
22
23
24
25
```

1
2                    P R O C E E D I N G S
3
4           THE COURT:  Are you, Mr. Starr?
5           MR. STARR:  I'm Mr. Starr.
6           THE COURT:  What's your first name?
7           MR. STARR:  Bart.
8           THE COURT:  I thought I saw your name.  A pretty tough
9    name to grow up with.
10          So we're here for the Rule 16 Conference in Comcast IP
11   Holdings 1 LLC versus Sprint Communications, et al, Civil Action
12   No. 12-205.  I have the proposed Scheduling Order.
13          Mr. Connolly, who have you got with you?  You don't
14   have Bart Starr.
15          MR. CONNOLLY:  I have with me Matt Lehr from Davis
16   Polk.  He started his career at Morris Nichols in Delaware.
17      He's a member of the Delaware bar.  And my colleague, Ryan
18   Newell.
19          THE COURT:  Good to see you all.
20          MR. LEHR:  Good to see you, your Honor.
21          THE COURT:  Mr. Herrmann?
22          MR. HERRMANN:  Good morning, your Honor.  Bart Starr,
23   Robert Reckers.  And on the phone is Aaron Hankel.  D.
24          THE COURT:  Good morning, Mr. Hankel.
25          All right.  A housekeeping matter.  I looked at the

1   docket and there was a motion, docket item 18 to Motion to
2   Dismiss Counterclaims and there was a First Amended Complaint.
3            Is the first Motion to Dismiss, is that moot now or is
4   that on something different than the Second Motion to Dismiss?
5            MR. LEHR:  It's moot, your Honor, by the Second Motion
6   to Dismiss.
7            THE COURT:  Okay.  I was hoping you would say that.  So
8   the second Motion to Dismiss, I don't want argument.  It was
9   just filed.  So the briefing is underway.
10           The gist of it is that the plaintiff says the
11  defendant -- plaintiff says the defendant counterclaims against
12  different parties, or at least some different parties than the
13  plaintiff, that that's a matter of law erroneous or that that's
14  a discretionary matter, what is the argument?
15           MR. LEHR:  It's a matter of law, we believe, your
16  Honor.
17           THE COURT:  And I also saw just from trying to figure
18  out whether the first one was moot, there was some reference to
19  litigation in Kansas or someplace else.  Does that actually have
20  anything to do with anything, or is that just suppose to give me
21  context?
22           MR. LEHR:  Just to give you context, your Honor.
23           THE COURT:  All right.
24           I take it since we've got Comcast and Sprint here, the
25  patents have something to do with communications?

1        MR. LEHR:  Broadly speaking, your Honor.

2        THE COURT:  It looks to me right now that Comcast has
3   six and Sprint has six?

4        MR. HERRMANN:  Correct.

5        THE COURT:  My inclination is to treat these as two
6   separate cases, because I'm quickly becoming convinced that you
7   can't at the end of the day have a trial with one side saying
8   here are my six patents and here's the other side saying here
9   are my six patents.

10       It seems to me that it kind of makes sense to have that
11  understanding upfront, and then it presents a way to actually
12  resolve most of the scheduling disputes, too, so we can use the
13  plaintiff's schedule for the plaintiff's patents and your
14  proposed schedule for your patents.  That's my idea here.

15       Is there anything that you want to say about it?

16       MR. HERRMANN:  I'll ask Mr. Reckers to respond.

17       MR. RECKERS:  What we propose is a single proceeding
18  for one.

19       Our rationale is following the rules.  The rules
20  contemplate a single proceeding, one case in controversy for the
21  jury to understand the full nature of the dispute between the
22  parties.

23       We had proposed a single proceeding with the twelve
24  patents-in-suit.  The jury can understand the issues are between
25  both parties.  And there are some efficiencies that would be

1 gained.

2 THE COURT: There is also a lot of confusion that will
3 be gained.

4 MR. RECKERS: That is certainly true. Efficiencies are
5 what they are. The communications in general, the jury has to
6 understand how the communication networks work and to be able to
7 do it once, in one proceeding. We think it has some strong
8 efficiencies. Of course, there are inefficiencies. Certainly a
9 lot of confusion with that many issues. That's the rationale.

10 THE COURT: I don't object to your rationale, whatever.
11 I have a relatively strong feeling that the confusion
12 outweighs the efficiencies, just at a generic matter, and so in
13 this case, too.

14 Since you proposed two trials, I assume you don't have
15 anything to add here?

16 MR. LEHR: I learned a long time ago not to say
17 anything when it's going my way, your Honor.

18 THE COURT: In terms of the actual Scheduling Order,
19 sort of housekeeping matters; Sprint, the defendant, you, want
20 to have a couple extra paragraphs on page 3 about amending
21 proposed final contentions. I guess as a general matter it
22 seems reasonable.

23 So what do you say about that?

24 MR. LEHR: Your honor, I don't have a problem with
25 final contentions in principle. It just strikes me that this is

1 probably a bit early to do final contentions.

2 THE COURT: So your problem is not so much the concept
3 but the dates that they picked?

4 MR. LEHR: Yes, I think that's probably right.

5 THE COURT: So Sprint is proposing these dates about a
6 half year before fact discovery?

7 MR. LEHR: I believe that's correct, your Honor, before
8 fact discovery closes.

9 Your Honor, if I may?

10 THE COURT: Sure.

11 MR. LEHR: I looked at the final contentions.
12 Typically the way I have done them over the years is they sort
13 of make their way into a final Pretrial Order, everything has
14 been done. The Markman Hearing been done. The issues are
15 really tailored.

16 I'm not suggesting it has to be that late in this case.
17 At least where we've got a better framework to do it.

18 THE COURT: Then the counterbalancing, countervailing
19 thing is that -- then there's argument that they need to do a
20 little more discovery because you're saying something different
21 than what they thought you were saying.

22 MR. HERRMANN: It would be nice, your Honor, to be able
23 to have the final contentions other than those contentions that
24 have to be changed because of the claim construction, the final
25 contentions in enough time to be able to know how to select

1 party issues.

2 THE COURT: Okay.

3 MR. STARR: Your honor, if I may?

4 THE COURT: Yes.

5 MR. STARR: The parties negotiated this proposed order
6 at a time that we were unaware they were going to file a Motion
7 to Dismiss our counterclaims.

8 This order anticipated six patents on each side.

9 Would it make sense -- I don't presume to know how the
10 Court will rule on the Motion to Dismiss.

11 I wonder if it might make sense to let the motion
12 briefing and the Court's order on their motion run its course
13 and then revisit possibly some of these dates at that time?

14 THE COURT: Let me just ask because that brings up
15 something else I was thinking of, which is this: Presumably,
16 other than the question of joint trials, there's no actual
17 reason why the appropriateness of bringing the counterclaims
18 that you've brought actually even has to be decided, is there,
19 because you could just -- if, in the end, I agreed with them and
20 said your counterclaims get dismissed, you would just file a new
21 lawsuit against the same parties with the same claims, right?

22 MR. STARR: That's a option. Sure.

23 THE COURT: I guess what I'm wondering, do you want to
24 do that?

25 MR. STARR: I don't know, given that this motion, I

1    believe, was just filed two days ago.
2              THE COURT: That's fair enough.
3              MR. STARR: We haven't had the opportunity to really
4    discuss it with the client.
5              I read it on the plane this morning for the first time.
6              My only comment is that this Motion to Dismiss, which
7    was filed after we negotiated this proposed order, is a bit of a
8    game changer, I believe, in terms of some of these dates.
9              MR. HERRMANN: Or could be.
10             THE COURT: I guess the only thing that I'm wondering
11   about is -- it's certainly to the extent of what I did was, I
12   printed out the table of contents of both of them.
13             I appears part of the reason why I thought the first
14   one was moot was because it appears to be more or less the first
15   one. I didn't go into it enough.
16             It's like trying to figure out did you do something
17   different in the amended counterclaims. And maybe there's
18   negotiations back and forth between you and -- I don't want to
19   get into that.
20             Just from as the outside observer looking at the docket
21   sheet, it doesn't look that strange that they filed the Motion
22   to Dismiss other than I suppose if you sat down and, you know,
23   talked about all this and nobody brought it up, so you walked
24   away saying, Well, I guess they are not doing that again. And
25   they walked away saying, I'm surprised they didn't ask us what

1    they were doing, you know, whatever.  But you're all here.
2              Where are you all from?
3              MR. LEHR:  Menlo Park, California, your Honor.
4              MR. STARR:  Kansas.
5              MR. RECKERS:  Houston.
6              THE COURT:  So you flew a long ways to get here.
7              MR. LEHR:  Your Honor, if I may interject?  Our view,
8    again, I don't want to argue the merits of the motion, it's not
9    fair to Mr. Starr.
10             Based on your Honor's predilection, do one of two
11   things; either treat these cases, sever their case and treat
12   them separately.  If they want to have a schedule like they
13   propose for their case, fine.
14             We prefer our schedule for our case, or if they want to
15   refile and start a new case, fine.
16             Our case has been pending since February.  We'd like to
17   get a move on.
18             THE COURT:  All right.
19             Well, that was original inclination.  But I am
20   concerned talking about inventors overseas.
21             What I'm going to do, I'm going to work out the
22   schedule for your set of patents right now.  Then we'll see if
23   we can work them out for you, too.
24             MR. HERRMANN:  With the extra months on the plaintiff's
25   set of patents that we were looking for your Honor, because of

1   the depositions overseas, I think we're only five months apart
2   in terms of the trial date.
3           THE COURT:  What do you have to say about the
4   depositions overseas?
5           MR. LEHR:  Your honor, I think it's really only three
6   witnesses.  The problem with pegging schedules to depositions
7   under the Hague, they could take forever to get done.  They
8   could get done quickly.  We really don't have any control over
9   that.
10          MR. HERRMANN:  That's the reason, your Honor, that we
11  want to have enough of a cushion so we don't have to come back
12  to the Court and change the trial date.
13          THE COURT:  In the end, if you need to change the
14  dates, you need to change the dates.
15          With that in mind, let's try working backwards from the
16  date that Comcast proposed for its five day jury trial.
17          How about June 2nd 2014?
18          And the Pretrial Conference would be May 16th of 2014
19  at 10:30 a.m.
20          And the Case Dispositive Motions date would be January
21  17th of 2014.
22          The disclosure of expert testimony would be December
23  6th of 2013.
24          And then all dates that correspond to that for the
25  extra reports, in other words, September 20th, October 25th,

1  November 8th.
2          And the idea behind the contentions date that you've
3  suggested, Sprint, is to have them firmed up before doing the
4  briefing on claim construction?
5          MR. RECKERS:  I believe it's around the same time.
6          THE COURT:  But that's the reason?
7          MR. RECKERS:  Yes.  All right.
8          THE COURT:  How about if we have the Comcast claim
9  construction hearing on June 20th at 9:00 a.m?
10         MR. LEHR:  That's fine, your Honor.
11         THE COURT:  And then the briefing would be as Comcast
12 proposes it, but you can move it back a month so that the final
13 Comcast -- so that the final Joint Claim Construction Brief, or
14 package, would be due on May 31st.
15         Maybe you all can work out the dates leading up to
16 that?
17         MR. LEHR:  Yes, your Honor.  Your Honor, may I ask a
18 question?
19         THE COURT:  Sure.
20         MR. LEHR:  Do you have a practice in terms of how many
21 claim terms parties are entitled to tee up?
22         THE COURT:  No.  But you have the page limits.
23         The idea is to pick the ones that actually matter.
24         MR. LEHR:  Fair enough, your Honor.
25         THE COURT:  Roughly speaking, if that's May 31st, that

1  moves all the briefing up by about six weeks.

2  That means that claim construction identification
3  starts in roughly, maybe by the end of January of 2013.

4  I guess no matter how I do this, I'm not seeing how the
5  utility of now that I'm actually working on the schedule of the
6  Sprint final contentions is helping on the claim construction.

7  MR. RECKERS: The dates would have to be moved. Our
8  dates lined up with our other proposals. They would have to be
9  moved.

10  THE COURT: Right. I guess what I'm wondering is in
11  terms of -- I guess I'm wondering how realistic it is to have
12  final infringement invalidity contentions -- the further you
13  move them up, the less they get from the preliminary.

14  MR. RECKERS: That's right. Given the schedule the way
15  it works, that makes sense.

16  THE COURT: I hate to do this after telling you I
17  thought it was a great idea and I would accept it.

18  Why don't we knock it out?

19  MR. RECKERS: I think that's right.

20  THE COURT: In terms of the discovery cutoff that
21  Comcast proposes, I think it's August 30th.

22  Is there anything that I've just done that makes it
23  seem that it should be changed?

24  MR. LEHR: I don't believe so, your Honor.

25  MR. RECKERS: Not from our perspective, your Honor.

1              THE COURT:  Leaving aside the actual claim construction
2    intermediate dates, which you can work out yourselves, does that
3    then resolve the schedule for Comcast's patents?
4              MR. LEHR:  I believe so, your Honor.
5              MR. RECKERS:  I think so.
6              THE COURT:  Let's do the same thing for the Sprint
7    patents.
8              By the way, if we end up that you file a separate
9    lawsuit, we'll just roll the dates over, okay?  At least that's
10   what I would expect.
11             So I was thinking in keeping with the proposal from
12   Sprint, that the trial, the second one could be on October 6th.
13   That would also be scheduled for five days.
14             The pretrial conference would be September 19th, 2014
15   at 8:30 a.m.
16             Case Dispositive Motions would be June 23rd as Sprint
17   proposes.
18             The expert timetable ending in May 10th, 2014 as Sprint
19   proposes.
20             The claim construction for the Sprint patent, how about
21   October 10th, 2013 at 9:00 a.m?
22             The briefing on the claim construction can be as Sprint
23   proposes.
24             And the claim construction issue identification, too.
25             And the discovery cutoff, I think, could be as Sprint

1   proposes, December 6th.

2           Does that cover all the dates for the Sprint patents?

3           MR. RECKERS: I believe so.

4           THE COURT: Then that leaves the limitation on hours

5   for deposition discovery.

6           It occurs to me when I was looking at this, there is no

7   way that I can actually make a rational decision, picking

8   between a 175 and a 140. So, therefore, my inclination is to go

9   with a 140 on the theory if Sprint thinks it can get it done in

10  a 140, Comcast, they won't be prejudiced by not having the 35

11  hours.

12          And so I'm kind of inclined to go with a 140. I

13  understand part of my job here is to avoid unnecessary

14  discovery. Since Sprint thinks it's unnecessary, I'm inclined

15  to make you go with a 140, too.

16          MR. LEHR: I'm not going to fight that too hard, your

17  Honor.

18          THE COURT: I wouldn't limit it to the 25 depositions,

19  however, it works out. If you've got the 140 hours, you got the

20  140 hours.

21          If you find a 141 hour deposition to be useful.

22          MR. LEHR: One thing we should clarify, your Honor. If

23  we go with the total number of a 140, I assume that would be

24  split across both cases as the parties see fit?

25          THE COURT: Yes, that was my thinking. You could

```
 1    allocate to yourselves.
 2              Is there anything else?
 3              MR. LEHR:  Nothing from Comcast.
 4              MR. RECKERS:  Nothing more from us.
 5              THE COURT:  All right.  I appreciate you all coming
 6    from a long distance.  I appreciate, Mr. Hankel, if you're still
 7    there?
 8              And I guess I'll look forward to the to the
 9    counterclaim briefing.
10              Mr. Connolly, I guess you'll submit -- whoever.
11              MR. CONNOLLY:  We'll work it out with Mr. Herrmann,
12    your Honor.
13              THE COURT:  Work out the intermediate dates.
14              My suggestion is just break it out and submit two
15    orders.  That will make it easier.  It will be complicated if
16    you try to write them both in the same order, I think.
17              MR. CONNOLLY:  That makes sense.
18              MR. LEHR:  Thank you, your Honor.
19              THE COURT:  Thank you.
20              (At this time, the Rule 16 conference concluded)
21
22
23
24
25
```