# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMCAST IP HOLDINGS I, LLC,    )
                                )
      Plaintiff,          )
                                )
      v.             )   C.A. No.: 1:12-cv-00205-RGA
                                )
SPRINT COMMUNICATIONS      )   **DEMAND FOR JURY TRIAL**
COMPANY L.P.; SPRINT SPECTRUM  )
L.P.; and NEXTEL OPERATIONS, INC., )
                                )
      Defendants.     )
                                )
                                )

## COMCAST'S BRIEF IN OPPOSITION TO SPRINT'S
## MOTION TO STAY LITIGATION PENDING REEXAMINATION

Of Counsel:
DAVIS POLK & WARDWELL LLP
Matthew B. Lehr (#2370)
Anthony I. Fenwick
David J. Lisson
Austin D. Tarango
Shiwoong Kim
Micah G. Block
1600 El Camino Real
Menlo Park, CA 94025
Tel:  (650) 752-2000
Fax:   (650) 752-2111

June 3, 2013

CONNOLLY GALLAGHER LLP
Arthur G. Connolly III (#2667)
Ryan P. Newell (#4744)
1000 West Street, Suite 1400
Wilmington, DE 19801
Tel:     (302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
*Attorneys for Comcast IP Holdings I,*
*LLC,*

## TABLE OF CONTENTS

PAGE

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 3

SUMMARY OF ARGUMENT ......................................................................................... 4

STATEMENT OF FACTS ................................................................................................ 4

    A.    Patent Litigations Between Comcast and Sprint Entities ........................... 4

        1.    The Comcast and Sprint Entities ................................................... 4

        2.    The Kansas Action ......................................................................... 5

        3.    The Delaware Actions ................................................................... 6

    B.    Status of this Case ..................................................................................... 7

    C.    Sprint's *Ex Parte* Reexamination Requests ............................................. 8

ARGUMENT .................................................................................................................. 10

    A.    A Stay Would Unduly Prejudice Comcast and Result in a Clear
        Tactical Advantage for Sprint ................................................................. 11

    B.    A Stay Will Not Simplify the Issues in this Case ...................................... 14

    C.    This Litigation is Well Underway and the Reexamination Proceedings
        Have Barely Begun ................................................................................. 18

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

PAGE

### Cases

*Adaptor, Inc. v. Sealing Sys.*,
No. 09CV1070, 2010 U.S. Dist. LEXIS 114997 (E.D. Wisc. Oct. 21, 2010) ............ 16

*ASCII Corp. v. STD Entm't USA*,
844 F. Supp. 1378 (N.D. Cal. 1994) ......................................................................... 19

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10–CV–02863–EJD, 2011 U.S. Dist. LEXIS 82665 (D. Del. July 28,
2011) ........................................................................................................................ 13

*Belden Techs. v. Superior Essex Commc'ns. LP*,
No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) ........ 11, 16, 20

*Boehringer Ingelheim Int'l. GmbH v. Barr Labs., Inc.*,
592 F.3d 1340 (Fed. Cir. 2010) ............................................................................... 17

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385 (D. Del. Dec. 13, 2010) ............... 13

*Enhanced Sec. Research, LLC v. Cisco Sys.*,
No. 09-cv-0571, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) .................. 19

*Ever Win Int'l Corp. v. Radioshack Corp.*,
No. 11-cv-1104, 2012 U.S. Dist. LEXIS 145559 (D. Del. Oct. 9, 2012) ................... 19

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ............................................................................... 10

*Gioello Enters. v. Mattel, Inc.*,
No. 99-cv-0375, 2001 U.S. Dist. LEXIS 26158 (D. Del. Jan. 29, 2001) ............. 16, 20

*Gladish v. Tyco Toys, Inc.*,
No. S–92–1666 WBS/JFM, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept. 15,
1993) ........................................................................................................................ 12

*Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.*,
No. 12–054–GMS–MPT, 2013 U.S. Dist. LEXIS 25015 (D. Del. Feb. 25,
2013) .................................................................................................................... 10, 11

*IMAX Corp. v. In-Three, Inc.*,
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ..................................................................... 16

*In re Yamamoto*,
    740 F.2d 1569 (Fed. Cir. 1984).......................................................................... 12

*Kenexa BrassRing, Inc. v. Taleo Corp.*,
    No. 07-521-SLR (D. Del. Feb. 18, 2009) ................................................. 17

*Lectrolarm Custom Serv., Inc. v. Vicon Indus., Inc.*,
    No. 03-2330 Ma/A, 2005 U.S. Dist. LEXIS 48482 (W.D. Tenn. Sept. 1, 2005) ....... 12

*Life Techs. Corp. v. Illumina, Inc.*,
    No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623 (D. Del. June 7, 2010)..................... 19

*Mission Abstract Data LLC v. Beasley Broad. Group, Inc.*,
    No. 11-cv-0176, 2011 U.S. Dist. LEXIS 130934 (D. Del. Nov. 14, 2011) ............... 19

*N Spine, Inc. v. Globus Med. Inc.*,
    No. 10-cv-0300, 2011 U.S. Dist. LEXIS 156683 (D. Del. July 14, 2011) .......... 16, 19

*Nokia Corp. v. Apple Inc.*,
    No. 09–791–GMS, 2011 U.S. Dist. LEXIS 58773 (D. Del. June 1, 2011) ............... 19

*Pegasus Dev. Corp. v. DirectTV, Inc.*,
    No. 00-cv-1020, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ............. 17, 20

*Round Rock Research LLC. v. Dole Food Co. Inc.*,
    No. 11-cv-1239-RGA, 2012 U.S. Dist. LEXIS 49106 (D. Del. Apr. 6, 2012)..... 18, 19

*Softview LLC v. Apple Inc.*,
    No. 10–389–LPS, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012)......... 15, 16

*Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC et al.*,
    No. 11-2684-KHV (D. Kan.) ....................................................................... 5

*Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc. et al.*,
    896 F. Supp. 2d 1049 (D. Kan. 2012)......................................................... 5

*Tric Tools, Inc. v. TT Techs., Inc.*,
    No. 12-CV-3490 YGR, 2012 U.S. Dist. LEXIS 153820 (N.D. Cal. Oct. 25,
    2012) ......................................................................................................... 12

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
    766 F. Supp. 212 (D. Del. 1991)................................................................ 19

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
    No. 10-cv-0503-SLR, 2010 U.S. Dist. LEXIS 123493 (D. Del. Nov. 22, 2010) ....... 19

*Ventronics Sys. LLC v. Draeger Med., GmbH*,
    No. 11-cv-114-RGA (D. Del. Mar. 28, 2012) ............................................................ 19

*Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*,
    No. 07–226–JJF, 2008 U.S. Dist. LEXIS 28983 (D. Del. Mar. 31, 2008) ................. 10

*Walker Digital LLC, v. Axis Commc'ns AB*,
    No. 1-11-cv-00558-RGA (D. Del. July 17, 2012) ...................................................... 13

*Walker Digital, LLC v. Google, Inc.*,
    No. 11–309–SLR, 2013 U.S. Dist. LEXIS 52176 (D. Del. Apr. 11, 2013).......... 10, 13

*Wall Corp. v. BondDesk Group, LLC*,
    No. 07-cv-0844, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009)............. 16, 19

*Waters Techs. Corp. v. Aurora SFC Sys. Inc.*,
    No. 11-cv-0708-RGA (D. Del. Aug. 6, 2012) ...................................................... 16, 19

*Xilinx, Inc. v. Invention Invest. Fund I LP*,
    No. 5:11–cv–0067 EJD, 2012 U.S. Dist. LEXIS 170736 (N.D. Cal. Nov. 30,
    2012) ................................................................................................................... 10, 15

Sprint's motion to stay is its latest attempt to obtain tactical advantage in a broader conflict between Sprint and Comcast that—remarkably—goes completely unmentioned in Sprint's supporting brief ("Sp. Br.").

There are multiple patent cases ongoing between Comcast and Sprint entities,[1] including two cases in this district and one on Sprint's home turf in the District of Kansas. Throughout this case, Sprint has sought to complicate, burden and delay proceedings on Comcast's claims here while trying to expedite proceedings in Kansas, all in an effort to get Sprint's infringement claims in Kansas to trial first. In this Court, Sprint twice asserted facially improper "counterclaims" that Comcast had to move to dismiss, then unsuccessfully sought a late trial that would encompass not only Comcast's claims but also infringement claims based on six Sprint patents, and then dragged its feet before providing Comcast with document discovery. Meanwhile, in Kansas, Sprint filed a motion for expedited scheduling that was denied by that court.

While waiting for a trial date to be set in Kansas, Sprint sat for months on invalidity positions that had been developed in this case. Only after the Kansas court issued its April 15, 2013 scheduling order rejecting Sprint's request for an early trial date did Sprint begin—just nine days later—filing the petitions for reexamination that would set the stage for its motion to stay.

Thus, the motivation behind Sprint's motion to stay could not be clearer. Currently, in the broader conflict between Sprint and Comcast, Comcast IP's claims in

---

[1] Defendants Sprint Communications Company L.P. ("Sprint Communications"), Sprint Spectrum and Nextel Operations, Inc., and their related corporate entities, shall be referred to collectively herein as "Sprint." Plaintiff Comcast IP Holdings I, LLC ("Comcast IP") and its related corporate entities shall be referred to collectively as "Comcast."

this case are scheduled to go to trial first, in June 2014, followed by trial of Sprint's infringement claims in this District in October 2014 and then by trial in the District of Kansas in April 2015 of Sprint's principal claims of infringement.[2]  Having recently failed to obtain the April 2014 trial date it requested in Kansas, Sprint now seeks a stay to delay trial of Comcast IP's claims until after the two scheduled trials of Sprint's claims.

In addition to ignoring completely the broader context of Sprint's conflict with Comcast and the tactical considerations—including significant tactical prejudice to Comcast—actually motivating the motion to stay, Sprint's motion broadly overstates any simplification of issues that would result from a stay, while understating the amount of work that has been done to date in this case and offering misleading predictions about the likely course of a reexamination proceeding.  Many of the issues in this case will *not* be addressed in the *ex parte* reexaminations.  Moreover, even as to the common issues, Sprint's opening brief conspicuously fails to offer to be bound in litigation by any determinations made by the USPTO in the reexaminations.  While by no means sufficient to justify a stay, such agreements are routinely offered by movants for a stay pending *ex parte* reexamination because, without them, there is no assurance that reexamination will eliminate even a single issue from the case.  Furthermore, Sprint's simplification arguments rely heavily on its assertion of double patenting arguments in both forums, but since Comcast owns all the remaining patents involved in that issue, this Court, as a practical matter, should never have to address its merits.

---

[2] We refer to Sprint's claims of infringement of a dozen patents in Kansas as Sprint's "principal" claims because they were filed before Sprint filed its offensive claims in this District (initially as improper "counterclaims") and because Sprint filed parallel infringement claims the same day against several other cable companies.

2

Granting a motion for stay pending *ex parte* reexaminations that was filed for clear tactical reasons more than fifteen months into this case would reward Sprint's strategy of delay, would effectively deprive Comcast of its chosen forum—the only forum in which *all* the issues in this case can be addressed—and would represent a significant departure from the approach to such motions that has generally prevailed in this District.  Sprint's request for stay should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

Comcast IP has asserted eight patents against Sprint in this case.  Trial is scheduled to begin on June 2, 2014.  The claim construction briefing has been submitted, and fact discovery closes in less than three months on August 30.  In two other cases, Sprint Communications has asserted a total of 18 patents against Comcast entities, one scheduled for trial in October 2014 in this Court and the other scheduled for trial in the District of Kansas in April 2015.[3]  Sprint began filing requests for *ex parte* reexamination of the patents-in-suit on April 24, 2013 and, to date, the USPTO has granted three of the eight reexams.  Despite the advanced stage of this case and Sprint's fourteen-month delay before filing its reexamination requests, Sprint now seeks a stay so that it may proceed to trial on its claims in the other cases before facing Comcast IP's claims here.  This is Comcast IP's brief in opposition to that motion.

---

[3] Comcast and Sprint are also engaged in patent litigation in the Eastern District of Pennsylvania, where both sides have asserted additional claims of patent infringement. No trial date has been set in that case.

## SUMMARY OF ARGUMENT

1.      Sprint's request for a stay in this case is a transparent attempt to gain an unfair tactical advantage by postponing trial on Comcast IP's claims until after trial on Sprint's claims in other cases pending in this Court and in the District of Kansas.

2.      A stay will not meaningfully simplify this case.  Even if granted as to all asserted claims, the *ex parte* reexaminations will leave numerous issues unaddressed that will likely need resolution by this Court.  In contrast, if not stayed, this case will resolve all issues concerning the patents-in-suit.

3.      This case has been pending for fifteen months and has made significant progress toward trial in June 2014.  The parties have already invested substantial resources in discovery, including in the production and analysis of over 1.8 million pages of documents, and have completed their claim construction briefing.  On the other hand, the reexaminations are in their early stages.

## STATEMENT OF FACTS

**A.      Patent Litigations Between Comcast and Sprint Entities**

**1.      The Comcast and Sprint Entities**

Plaintiff Comcast IP is an intellectual property holding company that is a wholly owned subsidiary of Comcast Corporation.  D.I. 20 at ¶¶ 9, 12.  Comcast Corporation has additional operating subsidiaries, including Comcast Cable and Comcast Phone, that own and/or operate cable systems and provide video, phone and Internet services to customers.  *Id.* at ¶¶ 4-7.

4

Defendant Sprint provides numerous telecommunications services, including wireless and wireline phone and data service.[4]  Sprint Communications also allegedly owns patents that it has asserted against various Comcast operating entities, including Comcast Cable and Comcast Phone, in other pending cases.

### 2.    The Kansas Action

On December 19, 2011, Sprint filed a patent infringement lawsuit in the District of Kansas accusing various Comcast entities, including Comcast Cable and Comcast Phone, of infringing twelve patents.  *See Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC et al.*, No. 11-2684-KHV (D. Kan.) (the "Kansas Action").  After significant motion practice and the pre-trial consolidation of the case with three others that Sprint Communications filed against other cable operators,[5] the parties submitted two vastly different proposed schedules to the Kansas court.  Sprint proposed trial in April 2014 and Comcast, along with the other cable operators, proposed trial in spring 2015.[6] On April 15, 2013, the Kansas court essentially adopted the cable defendants' schedule.[7]

---

[4] Lisson Decl. Ex. 1.

[5] The post-complaint motion practice was due to Sprint's inclusion in a case against another cable provider of an entity over which the Kansas court lacked personal jurisdiction and resulted in the transfer of that case to the District of Delaware on September 14, 2012.  *See Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc. et al.*, 896 F. Supp. 2d 1049 (D. Kan. 2012).  The remaining cable operators, including Comcast, then moved to transfer to Delaware in order to enable pre-trial coordination but the Kansas court denied that motion on January 31, 2013.  *See, e.g.,* Lisson Decl. Ex. 2.

[6] Lisson Decl. Ex. 3 at 18-19.

[7] Lisson Decl. Ex. 4 at 2-3.

### 3.    The Delaware Actions

Comcast IP filed its Complaint in this case on February 21, 2012, asserting four patents against Sprint. D.I. 1. Sprint answered on May 14, 2012 and asserted numerous defenses, including invalidity under 35 U.S.C. §§ 101 and 112 and due to obviousness-type double patenting. D.I. 11 at 11-12. Sprint also counterclaimed, asserting six patents against two non-party entities, Comcast Cable and Comcast Phone. *Id*. at p. 13 and ¶¶ 20, 24, 28, 32, 36, 40. Since they were asserted only against non-parties, the infringement "counterclaims" were improper and Comcast moved to dismiss. D.I. 18.

On the same day, Comcast IP also filed a First Amended Complaint, adding two recently issued patents from the same patent family as three of the patents already in suit. D.I. 22. In its responsive pleading, Sprint again asserted its improper "counterclaims" that Comcast had to move to dismiss for a second time on July 16, 2012. D.I. 26 and 29.

The next day, the parties submitted proposed case schedules to the Court. D.I. 31. Sprint proposed that both Comcast IP's and Sprint Communications' patent claims be heard in a single trial in late 2014. *Id.* at 11. Comcast proposed one trial on Comcast IP's claims in the spring of 2014 and a separate trial on Sprint Communications' patent claims a few months thereafter. *Id*. At the scheduling conference, the Court adopted Comcast's schedule for its patents and set trial on those claims for June 2, 2014. D.I. 36. The Court adopted a separate schedule for Sprint Communications' claims, which have since been severed into Case No. 1:12-cv-01013-RGA (the "'1013 Action"). Trial on Sprint's patents is scheduled to begin on October 6, 2014. D.I. 37.[8]

---

[8] Comcast filed a Second Amended Complaint adding two newly issued patents related to all but one of the patents already in suit on October 3, 2012, after waiting over

**B.**     **Status of this Case**

Discovery opened in this case on July 20, 2012 and is now well underway.  The

parties have exchanged and responded to significant written discovery.  *See* D.I. 32, 44,

49, 55, 70, and 71.  The deadline for substantial completion of document production

passed on April 1, 2013, and the parties have produced over 63,000 documents totaling

more than 1.8 million pages.[9]  Comcast IP has engaged at least one technical expert, who

has been disclosed to Sprint and who has been actively conducting infringement

analyses.[10]  Comcast IP provided infringement contentions on November 2, 2012 and

Sprint responded with voluminous invalidity contentions on December 3, 2012.  D.I. 63

and 66.  The parties have submitted their joint claim construction brief and a hearing on

claim construction is scheduled for June 20, 2013.  D.I. 36.  Comcast IP has served

deposition notices and Sprint has initiated third-party discovery.  D.I. 75, 77, 80, and 82.

The close of fact discovery is scheduled for August 30, 2013.  D.I. 36 at 3.

The progress made to date has been almost exclusively due to Comcast IP's

diligence in the face of delay by Sprint.  Whenever Comcast IP's counsel attempted to

negotiate an agreed discovery protocol, Sprint's counsel failed to meaningfully engage.[11]

---

two weeks for Sprint to indicate that it did not oppose the filing.  *See* D.I. 59 and Lisson
Decl. Ex. 5.

[9] *See* Lisson Decl. Exs. 6 and 7.

[10] Lisson Decl. Ex. 8.

[11] For example, Sprint's counsel represented in August 2012 that they would
provide a proposed e-discovery protocol within a week, only to indicate three weeks later
that they could not do so.  Lisson Decl. Exs. 9 and 10.  Comcast then put forward
proposals and Sprint's counsel again delayed for three weeks before responding with an
email that lacked any concrete comments.  Lisson Decl. Ex. 11.

Similarly, when Comcast IP's counsel took the initiative to unilaterally propose an e-discovery approach on October 26, 2012, Sprint's counsel never provided a response despite representing that they would do so promptly.[12]  By January 2013, Comcast IP determined that it could no longer wait for a response from Sprint and proceeded according to its October proposal by disclosing its custodians and search terms.[13]  Despite repeated requests, Sprint still refused to provide its discovery protocol until February 27, 2013, when, six months after receiving Comcast IP's requests for production, it provided its first concrete proposal.[14]  On March 29 and 30—the Friday and Saturday before the Monday deadline for substantial completion of document production—Sprint produced over 1.5 million pages.[15]  Then, just three days before the instant brief was due—and two months after the deadline for substantial completion of document production—Sprint revealed that it had yet to complete its search or production of its custodians' emails.[16]

### C.    Sprint's *Ex Parte* Reexamination Requests

Sprint filed its first two requests for *ex parte* reexamination on April 24, 2013—fourteen months after the filing of the complaint—and proceeded to file requests concerning the remaining patents-in-suit over the next two weeks.[17]  Sprint filed the

---

[12] Lisson Decl. Exs. 12 and 13.

[13] Lisson Decl. Ex. 14.

[14] Lisson Decl. Exs. 15 at 4 and 16.

[15] Lisson Decl. Exs. 6 and 17.

[16] Lisson Decl. Ex. 18.

[17] *See* Reckers Decl. Exs. A-H.

instant motion on May 16, 2013, before the USPTO had granted a single one of the reexamination requests.  To date, the USPTO has granted three of the eight.

The requests for reexamination are based primarily on allegations made in the invalidity contentions Sprint served in this case on December 4, 2012 and many of the invalidity charts in the requests are substantively identical to those that accompanied the contentions.[18]  In fact, much of the art cited in the anticipation and obviousness allegations in the requests was disclosed during the initial prosecution of at least one of the patents-in-suit.[19]  While Sprint also asserted invalidity due to obviousness-type double patenting in its requests, Comcast IP recently acquired the patents underlying those assertions and can file terminal disclaimers to cure any double patenting issues.[20]

Sprint did not include all of the prior art cited in its invalidity contentions in its requests and it has not agreed to be bound by the results of the reexaminations.[21]

---

[18] *Compare* Reckers Decl. Exs. A-H at Section VII with Lisson Decl. Ex. 19 and Lisson Decl. Ex. 20 with 21.

[19] For example, in the requests relating to five of the patents-in-suit, Sprint only asserts two references in its anticipation and obviousness allegations that are new to the USPTO and they describe one system that has nothing to do with the telephony-related services claimed by the patents-in-suit.  *Compare* Lisson Decl. Ex. 22 *with* Reckers Decl. Exs. A at 16-17, B at 16-17, C at 15-16, D at 16-17, and F at 17.

[20] *See* Lisson Decl. Ex. 23.

[21] In the meet-and-confer process related to this motion, Sprint's counsel indicated that, if Comcast IP would agree to the stay, Sprint could agree to be bound to the results of any reexamination, "but only as to patents [to] which the re-exam requests are actually granted and only as to invalidity grounds actually set out in the re-examination record, such as SNQs submitted with Sprint's requests and prior art rejections applied by the Office during the re-examination."  Lisson Decl. Ex. 24.  Comcast did not agree to the stay and in its motion Sprint did not offer to agree to even this limited estoppel.

9

## ARGUMENT

In deciding whether to grant a stay, this Court applies a three-factor test: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage." *Walker Digital, LLC v. Google, Inc.*, No. 11–309–SLR, 2013 U.S. Dist. LEXIS 52176, at *5–6 (D. Del. Apr. 11, 2013). Of the three factors, the third is the "most substantial and important." *Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.*, No. 12–054–GMS–MPT, 2013 U.S. Dist. LEXIS 25015, at *15–16 (D. Del. Feb. 25, 2013). Moreover, before a stay may be issued, the requesting party must make out a clear case of hardship or inequity if there is even a fair possibility that the stay would work damage to the other party. *Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*, No. 07–226–JJF, 2008 U.S. Dist. LEXIS 28983, at *4 (D. Del. Mar. 31, 2008) (citing *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)). As Judge Newman has noted, routinely staying cases pending reexamination creates a risk of "inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, J., concurring).[22]

---

[22] While Sprint cites *ASCII Corp. v. STD Entm't USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) in support of a liberal policy in favor of granting stay, courts "have begun to rethink that [liberal] policy in recent years." *Xilinx, Inc. v. Invention Invest. Fund I LP*, No. 5:11–cv–0067 EJD, 2012 U.S. Dist. LEXIS 170736, at *11 (N.D. Cal. Nov. 30, 2012).

**A.    A Stay Would Unduly Prejudice Comcast and Result in a Clear Tactical Advantage for Sprint**

Sprint's suggestion that its request for a stay is timely and not designed to achieve an unfair tactical advantage strains credibility.  In reality, this motion is just Sprint's most recent attempt to delay trial of Comcast IP's claims so that Sprint may proceed to trial first on its own claims in the Kansas Action and in the '1013 Action here.  In its brief, Sprint ignores those other cases and reduces the entire analysis to the fact that Comcast IP is not an operating subsidiary.  But this broader litigation context motivates Sprint's motion and reveals the significant tactical disadvantage a stay would inflict on Comcast.

Courts look at four factors when determining whether a stay would result in undue prejudice or clear tactical disadvantage: "(1) the timing of the request for reexamination; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties."  *Imagevision.Net*, 2013 U.S. Dist. LEXIS 25015, at *16.  Here, the first three factors are the most telling and weigh heavily against a stay.  Sprint waited fourteen months after the filing of the Complaint—and nearly five months after its invalidity positions were developed in its contentions—before submitting any of its reexamination petitions.  Plainly, what drove the timing of Sprint's reexamination requests was the Kansas court's rejection of Sprint's proposed trial date just nine days earlier.  That timing, and the fact that Sprint proceeded to move for a stay before any of the reexaminations had even been granted, are both indications of an improper tactical motivation.  *See Belden Techs. v. Superior Essex Commc'ns. LP*, No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960, at *7-8 (D. Del. Sept. 2, 2010) ("A request for reexamination made well after the onset of litigation followed by a subsequent request to

11

stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage."); *Tric Tools, Inc. v. TT Techs., Inc.*, No. 12-CV-3490 YGR, 2012 U.S. Dist. LEXIS 153820, at *7 (N.D. Cal. Oct. 25, 2012) (timing of stay request made before reexamination granted is an indicator of a tactical delay strategy).

Sprint's suggestion that the timing of its reexamination filings is somehow related to Comcast IP's October 2, 2012 infringement contentions must be rejected. Comcast IP's infringement contentions are irrelevant to Sprint's requests because reexamination is based on the broadest reasonable interpretation of the claims and because Sprint originally made its obviousness-type double patenting allegations in its Answer. *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). Regardless, Comcast IP's infringement contentions were served six months before the reexamination requests were filed and Sprint's invalidity positions in this case were developed in contentions served one month after that. *See* D.I. 63 and 66. There is thus no credible explanation for Sprint's delay in making the requests and seeking a stay, other than a desire to tactically disadvantage Comcast. *See Lectrolarm Custom Serv., Inc. v. Vicon Indus., Inc.*, No. 03-2330 Ma/A, 2005 U.S. Dist. LEXIS 48482, at *17 (W.D. Tenn. Sept. 1, 2005) (stay would constitue abuse of the reexamination process since defendants were aware of the allegedly invalidating prior art well before submitting the petition); *Gladish v. Tyco Toys, Inc.*, No. S–92–1666 WBS/JFM, 1993 U.S. Dist. LEXIS 20211, at *4–5, *7–8 (E.D. Cal. Sept. 15, 1993) (denying stay where party had known about the prior art six months before filing the reexamination request).

Instead of addressing the tactical benefit it is sure to gain from a stay, Sprint focuses almost exclusively on the fact that Comcast IP is not an operating entity. Sp. Br.

12

at 9-11. But none of Sprint's cases stand for the proposition that only an operating entity

in direct competition with an accused infringer can suffer undue prejudice or unfair

tactical disadvantage. [23] In fact, courts, including this one, frequently deny stays where

the plaintiff is a non-practicing entity. *See, e.g., Walker Digital*, 2013 U.S. Dist. LEXIS

52176, at *7-8; *Walker Digital LLC, v. Axis Commc'ns AB*, No. 1-11-cv-00558-RGA,

D.I. 70, Lisson Decl. Ex. 25 at 57-58 (D. Del. July 17, 2012); *Avago Techs. Fiber IP

(Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–CV–02863–EJD, 2011 U.S. Dist. LEXIS

82665, at *16 n.4 (D. Del. July 28, 2011) (noting competition between defendant and

plaintiff's parent company and plaintiff's parent company's subsidiaries). Nor do the

cases suggest that the Court should ignore the broader set of ongoing litigations between

Sprint and Comcast IP's corporate relatives (surely a significant aspect of the

"relationship of the parties") when considering the tactical advantage from a stay that

would accrue to Sprint. Indeed, Sprint's repeated attempts to insert claims against

Comcast Cable and Comcast Phone into this litigation demonstrate their relevance.[24]

Sprint's earliest attempts to avoid facing trial on Comcast IP's claims before

proceeding to trial on its own claims came with its responsive pleadings, when it twice

---

[23] The cases similarly do not hold that a stay will be granted just because a
plaintiff failed to seek a preliminary injunction, which is unsurprising given the high
factual burden that must be met for such relief. *See, e.g., Cooper Notification, Inc. v.
Twitter, Inc.*, No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385, at *14-15 (D. Del. Dec.
13, 2010).

[24] While Comcast IP emphasized that it is a separate and distinct entity from the
Comcast operating companies in its motions to dismiss Sprint's improper
"counterclaims," those motions were directed at ensuring Sprint followed the applicable
Federal Rules of Civil Procedure when asserting its claims. Comcast IP never suggested
that it was unrelated to the Comcast operating companies or that the litigations between
Comcast and Sprint entities should be viewed in isolation. *See* D.I. 19 and 30.

filed improper "counterclaims" that Comcast had to move to dismiss. *See* D.I. 18 and 29. The strategy continued in the case scheduling process until the Court rejected Sprint's proposals and scheduled two trials:  first on Comcast IP's claims and later on Sprint's claims.  Next, Sprint refused to engage constructively in negotiation of a joint discovery protocol, then produced over 1.5 million pages on the eve of the deadline for substantial completion of document production, and then revealed just three days ago that it had not completed its search of custodial emails.  Now that Comcast IP has finally had the opportunity to analyze Sprint's production to date and begin noticing depositions, Sprint moves for a stay, arguing in part that discovery has not progressed.  Because awarding such a stay would reward Sprint's gamesmanship and result in significant tactical advantage, it should be denied.

**B.     A Stay Will Not Simplify the Issues in this Case**

Sprint resorts to a gross mischaracterization of USPTO statistics to suggest that a stay will greatly simplify the case.  The reality is that numerous issues in this litigation will not be addressed by any of the requested *ex parte* reexaminations and Sprint has not agreed to be bound in litigation by their results.  Since much of the art asserted in the requests was cited during the prosecution of at least one of the patents-in-suit and Comcast IP now has the ability to cure any purported double patenting problems, it is likely that many if not all of the asserted claims will remain unchanged.  Accordingly, a stay is unlikely to simplify the issues in this case in any meaningful way.

Sprint's claim that USPTO statistics show that "77% of [] reexaminations result in all of the claims of the patent being canceled" is simply false and its suggestion that trial on "a substantial number" of Comcast IP's claims will be unnecessary should be given no

14

weight.  Sp. Br. at 4-5.  Sprint seems to arrive at the 77% number—which is found

nowhere in the USPTO stat sheet to which it cites—by adding the percentage of

reexamination requests that result in all claims of the patent being declared invalid (12%)

to the percentage of requests that result in *some* claim changes (65%).  Reckers Decl. Ex.

I at 2.  These statistics say nothing about how many claims are changed during

reexamination, since some claims may remain unchanged through a reexamination that

results in changes to others.  What the statistics do clearly show, however, is that it is

approximately twice as likely that all of the claims of a patent will be confirmed during

reexamination (23%) as it is that all of the claims will be canceled (12%).  *Id.*

More fundamentally, a stay is unlikely to meaningfully simplify this case because

the reexaminations will not resolve, or even address, numerous issues.  *See Xilinx*, 2012

U.S. Dist. LEXIS 170736, at *15 ("[T]o truly simplify the issues . . . the outcome of the

reexamination must 'finally resolve all issues in the litigation.'").  Sprint has disputed

infringement and has asserted numerous defenses, including invalidity under 35 U.S.C.

§§ 101, 102, 103 and 112, license, prosecution history estoppel, and statute of limitations.

D.I. 62 at 17-18.  While this Court will need to address all of these issues, reexamination

will be limited to anticipation and obviousness.  *See, e.g.*, *Softview LLC v. Apple Inc.*, No.

10–389–LPS, 2012 U.S. Dist. LEXIS 104677, at *9 (D. Del. July 26, 2012).  And

reexamination will not even fully address those defenses since Sprint has asserted

numerous prior art-based invalidity defenses in this case that it did not propose as

substantial new questions of patentability in its reexamination requests.  Simplification of

issues does not favor a stay when "the scope of the issues to be resolved during litigation

substantially exceeds the scope of the issues that can be resolved during the

reexamination proceedings." *Id.* at \*9–10; *see also IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) ("[W]hen reexamination will potentially eliminate only one issue out of many, a stay is not warranted."); *Belden Techs.*, 2010 U.S. Dist. LEXIS 90960, at \*7 (a stay is "not favored when infringement, validity under 35 U.S.C. § 112, or other issues outside the purview of reexamination remain to be tried").

Furthermore, Sprint has not even agreed to be bound by the results of any of the *ex parte* reexaminations. As this Court has noted, with an *ex parte* reexamination, "the party who filed the reexam is giving up nothing." *Waters Techs. Corp. v. Aurora SFC Sys. Inc.*, No. 11-cv-0708-RGA, D.I. 78, Reckers Decl. Ex. L, at 46 (D. Del. Aug. 6, 2012). Should Sprint be unhappy with the result of any of the reexaminations, it is free to return to this Court and litigate the very same issues. This differentiates this situation from a number of cases cited in Sprint's brief where stays were granted pending *inter partes* reexaminations, which have a preclusive effect on the requester.[25] Here, Sprint remains free to return to this Court for a second bite at the apple, further reducing the chances that the issues for trial will be meaningfully reduced. *See Adaptor, Inc. v. Sealing Sys.*, No. 09CV1070, 2010 U.S. Dist. LEXIS 114997, at \* 7-8 (E.D. Wisc. Oct. 21, 2010) ("one of the strongest indicators that simplification of issues is too uncertain to support a stay is the [*ex parte*] nature of the reexamination").

---

[25] *See Water Techs. Corp. v. Aurora SFC Sys. Inc.*, No. 11-cv-0708-RGA, D.I. 78 (D. Del. Aug 6, 2012), Reckers Decl. Ex. L at 44-45; *N Spine, Inc. v. Globus Med. Inc.*, No. 10-cv-0300, 2011 U.S. Dist. LEXIS 156683, at \*3, 12 (D. Del. July 14, 2011); *Wall Corp. v. BondDesk Group, LLC*, No. 07-cv-0844, 2009 U.S. Dist. LEXIS 20619, at \*1-2 (D. Del. Feb. 24, 2009); *Gioello Enters. v. Mattel, Inc.*, No. 99-cv-0375, 2001 U.S. Dist. LEXIS 26158, at \*4-5 n.2 (D. Del. Jan. 29, 2001) (noting *inter partes* nature of reexamination proceedings by reference to the schedule of submissions by both parties).

Sprint makes much of the fact that there are multiple patents-in-suit and that some of its requests are based in part on "complicated" obviousness type double patenting. Sp. Br. at 6-7. First, seven of the eight patents-in-suit are from the same patent family and share nearly identical disclosures, significantly reducing the level of complexity. Second, much of the art asserted in the reexamination requests was before the Examiner during the initial prosecution of at least one of the patents-in-suit, making it unlikely that the prosecution history that emerges will add anything new to the analysis. *See, e.g., Kenexa BrassRing, Inc. v. Taleo Corp.*, No. 07-521-SLR, D.I. 53 (D. Del. Feb. 18, 2009), Lisson Decl. Ex. 26 at 1 ("It is the rare case in which a reexamination proceeding . . . actually changes the character of the case."). Third, Comcast IP owns the patents on which the double patenting assertions are based and can file terminal disclaimers to cure any final rejection on that ground.[26] *See Boehringer Ingelheim Int'l. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010). This case therefore presents no unusual complexity that would justify a stay.[27]

---

[26] *See* Lisson Decl. Exs. 27. Of course, if the USPTO rejects Sprint's double patenting arguments, then Sprint can still make these assertions before this Court since it has not agreed to be bound by the result, but a stay will not change that fact. If, on the other hand, the Court does not stay this case and the double patenting arguments have not been resolved in Comcast IP's favor by the time of the pretrial conference, then Comcast IP will simply file terminal disclaimers and dispense with the issue.

[27] In fact, two cases that Sprint cites to suggest a stay is necessary to narrow the issues actually demonstrate how relatively straightforward this case is. In *Pegasus Dev. Corp. v. DirectTV, Inc.*, the court noted that the assertion of six patents and dozens of claims did not make the case extraordinarily complex. No. 00-cv-1020, 2003 U.S. Dist. LEXIS 8052, at *4-5 (D. Del. May 14, 2003). Rather, it was the 300 related patent applications and 10,000 claims filed on the same 300-column application that caused the court to conclude that it would benefit from a narrowing of the issues. *Id.* Similarly in *Round Rock Research LLC. v. Dole Food Co. Inc.*, this Court emphasized that there were

17

**C.   This Litigation is Well Underway and the Reexamination Proceedings Have Barely Begun**

This case was filed over fifteen months ago and the parties have already invested significant time and resources in discovery and claim construction. They have served and responded to numerous interrogatories and requests for production, and have together produced over 63,000 documents totaling more than 1.8 million pages. Comcast IP has spent considerable time and effort reviewing Sprint's productions to date and has begun noticing depositions. Fact discovery is scheduled to close on August 30—a little under three months away—and trial is scheduled to begin within a year.

Sprint's suggestion that the case is in an early stage because depositions, claim construction and expert discovery have yet to be completed is misplaced. Sp. Br. at 7-8. Depositions have yet to occur because Sprint refused to engage in the development of a discovery protocol and then produced 1.5 million pages within three days of the document production deadline. Now that Comcast has had an opportunity to review Sprint's production, it has noticed depositions. Any lack of progress caused by Sprint's obstruction does not support a stay. Moreover, the parties have disclosed and fully briefed their claim construction positions in advance of the claim construction hearing scheduled for June 20, and the reexamination proceedings will not change the parties' positions or the patent specifications on which they are based. Finally, as Sprint knows, Comcast IP is already incurring the expense of at least one expert who has been assisting in the review and analysis of Sprint's documents.

---

twice as many claims likely to be asserted as have been asserted here. No. 11-cv-1239-RGA, 2012 U.S. Dist. LEXIS 49106 (D. Del. Apr. 6, 2012).

The advanced stage of this case distinguishes it from most of the cases cited in

Sprint's brief, which granted stays before discovery had meaningfully commenced.[28]

Indeed, courts have regularly denied motions to stay at similar stages as this case. *See,*

*e.g., Nokia Corp. v. Apple Inc.*, No. 09–791–GMS, 2011 U.S. Dist. LEXIS 58773, at *6

(D. Del. June 1, 2011) (denying stay where the parties were "in the midst of fact

discovery" and trial was approximately one year away); *Life Techs. Corp. v. Illumina,*

*Inc.*, No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623, at *10-11 (D. Del. June 7, 2010)

(denying stay where close of fact discovery was five months away and no depositions had

been noticed).[29]

---

[28] *See, e.g., Ever Win Int'l Corp. v. Radioshack Corp.*, No. 11-cv-1104, 2012 U.S. Dist. LEXIS 145559, at *11 (D. Del. Oct. 9, 2012) (scheduling order had yet to be entered and no discovery occured); *Ventronics Sys. LLC v. Draeger Med., GmbH*, No. 11-cv-114-RGA, D.I. 220 (D. Del. Mar. 28, 2012), Reckers Decl. Ex. M at 36-37 (motion to stay was filed before the Rule 16 scheduling conference); *N Spine, Inc.*, 2011 U.S. Dist. LEXIS 156683, at *12 (*inter partes* reexamination request submitted only eight months after filing of suit); *Mission Abstract Data LLC v. Beasley Broad. Group, Inc.*, No. 11-cv-0176, 2011 U.S. Dist. LEXIS 130934, at * 7-8 (D. Del. Nov. 14, 2011) (no trial date had been set and few resources had been expended on the litigation); *Water Techs. Corp.*, Reckers Decl. Ex. L at 44-45 (trial date was two years away and discovery had barely started); *Wall Corp.*, 2009 U.S. Dist. LEXIS 20619, at *1-2 (motion to stay pending *inter partes* reexamination filed before issuance of scheduling order); *Round Rock Research LLC.*, 2012 U.S. Dist. LEXIS 49106, at * 3 (litigation had not progressed beyond the initial pleading stage); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-cv-0503-SLR, 2010 U.S. Dist. LEXIS 123493, at * 4 (D. Del. Nov. 22, 2010) (stay requested prior to issuance of scheduling order or beginning of discovery); *Enhanced Sec. Research, LLC v. Cisco Sys.*, No. 09-cv-0571, 2010 U.S. Dist. LEXIS 63789, at *11 (D. Del. June 25, 2010) (trial date not set and discovery in its early stages); *ASCII Corp. v. STD Entm't USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("parties are in the initial stages of the lawsuit and have undertaken little to no discovery"); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 216-17 (D. Del. 1991) (reexamination, which was instituted by the party opposing the stay, was at a relatively advanced stage while the litigation, in which little discovery had occurred, was not).

[29] The cases cited by Sprint to suggest that stays are routinely granted at this stage are inapposite.  The court in *Pegasus* was primarily concerned with the "involved

In contrast, the reexamination proceedings—which Sprint waited over fourteen months to initiate—have only just begun.  As Judge Robinson has noted, "reexamination is an arduous process fraught with the potential for multiple appeals."  *Belden Techs.*, 2010 U.S. Dist. LEXIS 90960, at *9.  Statistics presented to the Sedona Conference in 2010 show that *ex parte* reexaminations took, on average, over four years to complete through appeals to the Board of Patent Appeals and Interferences.[30]  "Consequently, only those reexamination proceedings that have been substantially completed will weigh in favor of a stay."  *Id* at 10.  That is not the case here and the stage of proceedings factor therefore weighs against a stay.

## CONCLUSION

A stay will not meaningfully simplify this case, but it will unduly prejudice Comcast and give Sprint a significant tactical advantage by allowing it to proceed to trial on its claims first.  Accordingly, Sprint's motion should be denied.

---

prosecution history of the various patents-in-suit and hundreds of related patents" and *Gioello Enters. Ltd.* concerned *inter partes* review.  *Pegasus Dev. Corp.*, 2003 U.S. Dist. LEXIS 8052, at *6; *Gioello Enters. Ltd.,* 2001 U.S. Dist. LEXIS 26158, at *4-5.

[30] Lisson Decl. Ex. 27 at 7.

Dated:  June 3, 2013

CONNOLLY GALLAGHER LLP

By:  _/s/ Arthur G. Connolly III_

Of Counsel:

DAVIS POLK & WARDWELL LLP

Matthew B. Lehr (#2370)
Anthony I. Fenwick
David J. Lisson
Austin D. Tarango
Shiwoong Kim
Micah G. Block
1600 El Camino Real
Menlo Park, CA 94025
Telephone:  (650) 752-2000
Facsimile:  (650) 752-2111

Arthur G. Connolly III (#2667)
Ryan P. Newell (#4744)
1000 West Street, Suite 1400
Wilmington, DE 19801
Tel:        (302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com

_Attorneys for Comcast IP Holdings I, LLC_