**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| COMCAST IP HOLDINGS I, LLC, | **PUBLIC - REDACTED VERSION** |
| Plaintiffs, | C.A. No.: 1:12-cv-00205-(RGA) |
| v. | **DEMAND FOR JURY TRIAL** |
| SPRINT COMMUNICATIONS COMPANY L.P.; SPRINT SPECTRUM L.P.; and NEXTEL OPERATIONS, INC., | |
| Defendants. | |

**SPRINT'S OPENING BRIEF IN SUPPORT OF ITS MOTION**
**FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY AND NO WILLFUL**
**INFRINGEMENT OF U.S. PATENT NO. 7,012,916**

*Of counsel:*

B. Trent Webb (*pro hac vice*)
Peter Strand (*pro hac vice*)
John Garretson (*pro hac vice*)
Aaron Hankel (*pro hac vice*)
Ryan Schletzbaum (*pro hac vice*)
Ryan D. Dykal (*pro hac vice*)
Lynn C. Herndon (*pro hac vice*)
Lauren Douville (*pro hac vice*)
Albert F. Harris (*pro hac vice*)
Jordan Bergsten (*pro hac vice*)
**SHOOK, HARDY & BACON LLP**
2555 Grand Boulevard
Kansas City, Missouri 64108-2613

Robert Reckers (*pro hac vice*)
Matthew C. Broaddus (*pro hac vice*)
Jared Tong (*pro hac vice*)
Fiona Bell (*pro hac vice*)
**SHOOK, HARDY & BACON LLP**
600 Travis Street, Suite 3400
Houston, Texas 77002-2992

Dated: January 17, 2014

Richard K. Herrmann (DE #405)
Mary B. Matterer (DE #2696)
**MORRIS JAMES LLP**
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

*Attorneys for Sprint*

**Public version filed: January 31, 2014**

i

REDACTED - PUBLIC VERSION

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.     INTRODUCTION ......................................................................................................... 1

III.    SUMMARY OF THE ARGUMENTS ........................................................................... 3

IV.     STATEMENT OF UNCONTROVERTED FACTS ....................................................... 4

V.      THE LEGAL STANDARDS ......................................................................................... 6

        A.      The Legal Standard Governing Summary Judgment ............................................ 6

        B.      The Legal Standard for Anticipation .................................................................. 6

        C.      The Legal Standard for Willful Infringement ...................................................... 7

VI.     ARGUMENT ................................................................................................................. 8

        A.      Claim 45 of the '916 Patent is Anticipated by RFC 1703. ................................... 8

                1.      The Claimed "Parsing" is Not Restricted to Parsing ▮▮▮▮▮▮▮▮▮▮▮
                        ▮▮▮▮▮▮ . ...................................................................................... 8

                2.      The Claimed "URI" is Not Limited to the Syntactical Requirements
                        Advocated by Comcast ............................................................. 11

                3.      Applying the Proper Definitions of "Parsing" and "URI," RFC 1703
                        Anticipates Independent Claim 45 ............................................ 13

        B.      RFC 1703 Anticipates Dependent Claims 47 and 48 ......................................... 17

        C.      Comcast Cannot Establish that Sprint Willfully Infringed the '916 Patent .......... 17

VII.    CONCLUSION ............................................................................................................. 19

REDACTED - PUBLIC VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000)...................................................................................6

*Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Services, Inc.*,
2012 WL 1088698 (Fed. Cir. 2012).............................................................................18

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001).....................................................................................6

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*,
687 F.3d 1266 (Fed. Cir. 2012).....................................................................................9

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
682 F.3d 1003 (Fed. Cir. 2012)................................................................................7, 17

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
260 Fed. App'x 284 (Fed. Cir. 2008)............................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................................................6

*Electro Med. Sys. S.A. v. Cooper Life Scis., Inc.*,
34. F.3d 1048, 1052 (Fed. Cir. 1994)............................................................................7

*EMI Group North Am., Inc. v. Intel Corp.*,
157 F.3d 887 (Fed. Cir. 1998).......................................................................................6

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
93 F.3d 1572 (Fed. Cir. 1996).......................................................................................9

*Helifix Ltd. v. Blok-Lok, Ltd.*,
208 F.3d 1339 (Fed. Cir. 2000).....................................................................................6

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
585 F. Supp. 2d 636 (D. Del. 2008)..............................................................................8

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) (en banc).................................................................7, 17

*Innova/ Pure Water Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004).....................................................................................9

*Leggett & Platt, Inc. v. VUTEk, Inc.*,
537 F.3d 1349 (Fed. Cir. 2008).....................................................................................6

*Lucent Tech., Inc. v. Gateway, Inc.*,
525 F.3d 1200 (Fed. Cir. 2008)........................................................................9

*Medichem, S.A. v. Rolabo, S.L.*,
353 F.3d 928 (Fed. Cir. 2003)..........................................................................6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)...............................................9, 10, 12

*Pivonka v. Central Garden & Pet Co.*,
2008 WL 486049 (D. Colo. 2008).....................................................................19

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011)........................................................................7

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
620 F.3d 1305 (Fed. Cir. 2010)..............................................................7, 17, 18

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001)........................................................................6

*Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*,
510 F. Supp. 2d 356 (D. Del. 2007)...................................................................6

*Toshiba Corp. v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012)........................................................................10

**STATUTES**

35 U.S.C. § 101...........................................................................................1

35 U.S.C. § 102..................................................................................2, 6, 17, 19

35 U.S.C. § 102(b)........................................................................................4

35 U.S.C. § 302 *et seq.*..................................................................................4

**OTHER AUTHORITIES**

37 C.F.R. § 1.510 *et seq.*...............................................................................4

Fed. R. Civ. P. 56 (c)....................................................................................6

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement lawsuit brought by Comcast IP Holdings, I, LLC ("Comcast") against Sprint Communications Company, L.P., Sprint Spectrum, L.P., and Nextel Operations, Inc. (collectively "Sprint").  Sprint incorporates by reference the "Nature and Stage of the Proceedings" included in its Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 6,873,694 under 35 U.S.C. § 101.

## II.     INTRODUCTION

Sprint moves for summary judgment that the asserted claims of U.S. Patent No. 7,012,916 (the "'916 patent") are invalid as anticipated by the RFC 1703 prior art reference.  In this case, Comcast asserts that Sprint infringes independent claim 45 of the '916 patent, as well as dependent claims 47 and 48.  Independent claim 45 recites a straightforward, three step method for "accessing communications data for contacting a target entity."  First, claim 45 requires "forming . . .  a domain name by a process including parsing at least a substantial portion of the number string . . . ."  This "domain name" is supplied "to a DNS-type database system," which provides " a resource record including an URI [Uniform Resource Identifier] for locating communications data associated with the domain name."  Finally, the provided URI is used "to access said communications data" for contacting the target entity.

For its part, RFC 1703, which was published well over a year before the earliest possible priority date of the '916 patent invalidates at least the three asserted claims of that patent.  RFC 1703 teaches the precise steps recited by claim 45 by disclosing a system that utilizes a DNS-type database system to access communication data used to contract a target entity.  Specifically, RFC 1703 teaches parsing a phone number to form a domain name.  This domain name is supplied to a DNS-type database system, which returns a resource record identifying the URI of a server associated with the target entity.  Finally, RFC 1703 teaches that this URI may be used

REDACTED - PUBLIC VERSION

to obtain communications data for contacting the target entity, thereby completing the third and final step of claim 45.

During the course of discovery, Comcast, through its technical expert, Dr. Eric Burger, articulated two bases for challenging the otherwise clear mapping of claim 45 to the teachings of RFC 1703.  Both of Comcast's arguments, however, turn on legal issues of claim construction.  Specifically, Comcast seeks to insert limitations into claim 45 and argues these _new_ limitations are not taught by RFC 1703.  Comcast's attempt to rewrite claim 45 to save its validity must be rejected in light of a proper claim construction analysis.  Notwithstanding Comcast's attempt to recast the claims to fit its validity theories, the record is devoid of any genuine issues of material fact precluding summary judgment, and Sprint is entitled to judgment that claims 45, 47 and 48 of the '916 patent are invalid under 35 U.S.C. § 102.

In addition, the Court should hold that Comcast's willfulness allegations fail as a matter of law.  Of the four patents in this suit, Comcast's willfulness allegations are directed solely to the alleged infringement of the '916 patent.  Aside from a record lacking evidence that Sprint had actual pre-suit knowledge of this patent, Sprint has advanced numerous, credible defenses, including the invalidity defenses addressed in this motion and presented to the U.S. Patent and Trademark Office ("PTO") in Sprint's request for re-examination.  It is well settled that, when the accused infringer has reasonable non-infringement or invalidity defenses, the accused infringer cannot willfully infringe as a matter of law.  Indeed, the PTO is presently reexamining the asserted claims of the '916 patent in light of numerous "substantial new questions" as to the patentability of the asserted claims, and these claims presently stand rejected by the PTO.  Given this record, Comcast cannot meet the threshold objective prong of the Federal Circuit's

willfulness test, which should always be considered by the Court as a matter of law.  Sprint is entitled to summary judgment that it has not willfully infringed the '916 patent.

## III.    SUMMARY OF THE ARGUMENTS

1.      The proper construction of the claim terms "parsing" and "URI" is a legal issue that should be decided by the Court.  Comcast proposes adding limitations to these terms that are not supported by the intrinsic or extrinsic claim construction evidence.  The Court should reject Comcast's proposed limitations.

2.      The Court should grant summary judgment of invalidity of the '916 patent because there is no genuine dispute of material fact that would preclude a finding that claims 45, 47 and 48 are anticipated by RFC 1703.  It is undisputed that RFC 1703 was published over a year before the earliest possible priority date of the '916 patent, and therefore, is prior art to the '916 patent.  RFC 1703 discloses a system that utilizes a DNS-type database system to access communication data used to contact a target entity.  In particular, RFC 1703 teaches the first step of claim 45 by disclosing parsing a phone number to form a domain name.  RFC 1703 also teaches the second step of claim 45 by disclosing that the formed domain name is supplied to a DNS-type database system, which returns a resource record identifying the URI of server associated with a target entity.  RFC 1703 teaches the third, and final, step of claim 45 by disclosing that the provided URI may be used to obtain communication data for contacting the target entity.  Further, RFC 1703 teaches claims 47 and 48 by expressly disclosing a telephone number that is parsed into a domain name and email addresses and/or telephone numbers that serve as endpoint addresses for the target entity.

3.      Sprint has advanced substantial invalidity defenses regarding the '916 patent. Therefore, Comcast cannot establish by clear and convincing evidence that Sprint's actions with respect to the '916 patent were objectively reckless.  Because Comcast cannot meet the threshold

objective prong of the Federal Circuit's willfulness test, Sprint is entitled to judgment as a matter of law of no willful infringement of the '916 patent.

## IV.     STATEMENT OF UNCONTROVERTED FACTS

The following undisputed facts support the present motion.

1.     Comcast alleges Sprint infringed claims 45, 47 and 48 of the '916 patent and also that Sprint's infringement has been willful.  (D.I. 1, at 2-3.)

2.     The '916 patent claims priority to Great Britain (GB) Application No. 9603582.9, filed on February 20, 1996.  A copy of the '916 patent is attached as Exhibit A.

3.     Request for Comments (RFC) 1703 was published by the Internet Engineering Task Force, in October of 1994.  RFC 1703 is prior art to the '916 patent under at least 35 U.S.C. § 102(b).   A copy of RFC 1703 is attached as Exhibit B.

4.     On April 24, 2013, Sprint filed an *Ex Parte* Request for Reexamination (hereinafter "Reexamination Request") of the '916 patent.[1]  (D.I. 74-1.)

5.     The PTO granted Sprint's Reexamination Request, on May 30, 2013, finding that a substantial new question of patentability had been raised as to claims 45-48[2] of the '916 patent. (D.I. 92.)

6.     On September 24, 2013, the PTO mailed a Non-Final Office Action, which includes non-final rejections of claims 45-48 of the '916 patent based on anticipation by RFC 1703.  The PTO also issued non-final rejections based on obviousness and double-patenting of claims 45-48.   A copy of the Non-Final Office Action is attached hereto as Exhibit C.

7.     Claim 45 of the '916 patent is an independent claim that recites:

---

[1] The Reexamination Request was filed pursuant to 35 U.S.C. § 302 *et seq.* and 37 C.F.R. § 1.510 *et seq.*

[2] Comcast is no longer asserting claim 46 of the '916 Patent against Sprint.

REDACTED - PUBLIC VERSION

A method of accessing communications data for contacting a target entity, said method comprising:

forming, from a number string identifying the target entity, a domain name by a process including parsing at least a substantial portion of the number string into at least a part of said domain name;

supplying the domain name formed to a DNS-type database system and receiving back a resource record including an URI for locating communications data associated with the domain name; and

using the URI received back to access said communications data. (Ex. A, claim 45.)

8.      Claims 47 and 48 depend from claim 45.  Claim 47 recites "[a] method according to claim 45, wherein each said number string is a telephone number."  Claim 48 recites "[a] method according to claim 45, wherein the communications data is a communications endpoint address for the target entity."  (Ex. A, claims 47 and 48.)

9.      RFC 1703 teaches a domain name that is formed by a process that includes reversing the digits of a telephone number, inserting periods between each digit, and appending the "tpc.int" suffix.  (Ex. B, at 2.)

10.      RFC 1703 further teaches that the domain name is supplied to the DNS database and a resource record is returned.  The resource record contains a string of characters that identifies a paging server on a network.  (Ex. B, at 2–3.)

11.      RFC 1703 also teaches that the string of characters identifying the paging server may be used to send a page to a target entity and to access an email address associated with the target entity.  (Ex. B, at 7.)

REDACTED - PUBLIC VERSION

## V.      THE LEGAL STANDARDS

### A.      The Legal Standard Governing Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is a tool to promote judicial economy and avoid unnecessary trials. *See EMI Group North Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998).  The "mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment." *Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 510 F. Supp. 2d 356, 358 (D. Del. 2007)*.

### B.      The Legal Standard for Anticipation

Anticipation is a question of fact, which a court may decide on summary judgment if the record reveals no genuine dispute of material fact. *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008).  A party successfully challenges a patent on anticipation grounds under 35 U.S.C. § 102 by meeting the clear and convincing standard for persuasion. *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) (citation omitted).  Whether a claim is anticipated by the prior art is a two-step inquiry.  First, the court must construe the claim "before determining its validity just as it is first construed before deciding infringement." *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Second, the properly construed claim is compared to the prior art.  *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).  "To be anticipating, a prior art reference must disclose each and every limitation of the claimed invention, must be enabling, and must describe the claimed invention sufficiently to have placed it in possession of a person

6

REDACTED - PUBLIC VERSION

of ordinary skill in the field of the invention." *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (internal quotations omitted); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citation omitted); *Electro Med. Sys. S.A. v. Cooper Life Scis., Inc.*, 34. F.3d 1048, 1052 (Fed. Cir. 1994).

### C.    The Legal Standard for Willful Infringement

To establish willful infringement, Comcast "must [first] show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). "The state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* Second, "[i]f this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* Importantly, the Federal Circuit has clarified that the first prong—the objective prong—is determined as a matter of law. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) ("[T]he ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.").

When the accused infringer has reasonable non-infringement or invalidity defenses, the accused infringer cannot willfully infringe as a matter of law. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. App'x 284, 291 (Fed. Cir. 2008) (holding that "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of" willful infringement); *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("'[W]here an accused infringer relies on a reasonable defense to a charge of infringement,' the objective prong tends not to be met." (quoting *Spine Solutions, Inc. v.*

7

*Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305,1319 (Fed. Cir. 2010))); *Honeywell Int'l,*

*Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 636, 644 (D. Del. 2008).

## VI.    ARGUMENT

### A.    Claim 45 of the '916 Patent is Anticipated by RFC 1703.

As previously mentioned, Comcast has identified two claim construction issues as the

foundation for its challenge to the otherwise straightforward mapping of the asserted claims of

the '916 patent to the teachings of RFC 1703. ███████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ These proposed limitations are unduly

restrictive and are not supported by the intrinsic or extrinsic claim construction evidence.

Comcast's improper claim constructions must be rejected, and no genuine issues of material fact

preclude summary judgment that claim 45 of the '916 patent is anticipated by RFC 1703.

### 1.    The Claimed "Parsing" is Not Restricted to Parsing by a Computer or Software.

In his expert report, Comcast's technical expert, Dr. Burger, attempts to distinguish the

teaching of RFC 1703 from the claimed "parsing" by pointing out that RFC 1703 does not

expressly teach ████████████████████████████ to construct a domain name.[3]  Dr.

Burger explains, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

_____
[3] ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████

REDACTED - PUBLIC VERSION

██████████████████████████████████████████████[4]   While Dr. Burger and Comcast

attempt to ███████████████████████████████████████████████████████████████

█████████,[5] the actual claim language is devoid of any such requirement, and there is no legal

support for limiting the claimed ████████████████████████████████.

As this Court is well aware, it "is a 'bedrock principle' of patent law that 'the claims of a

patent define the invention to which the patentee is entitled the right to exclude.'"   *Phillips v.*

*AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/ Pure Water Inc. v.*

*Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).   Turning first to the

claim language, the claims simply require "parsing" ██████████████████████.   To insert

such a limitation now would amount to an improper redrafting of claim 45.   *See Bancorp Servs.,*

*LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1275 (Fed. Cir. 2012) (concluding that the

asserted independent method claims did not require implementation on a computer because the

plain language of the claims did not require a computer); *Phillips*, 415 F.3d at 1320, 1323–24

(acknowledging that limitations should not be read into the claims); *Lucent Tech., Inc. v.*

*Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) (emphasizing that courts must not "redraft

claims").   The patentee did not restrict the claimed parsing to ██████████████████ parsing, and

Comcast "must live with the language [the patentee] chose." *Ethicon Endo-Surgery, Inc. v. U.S.*

*Surgical Corp.*, 93 F.3d 1572, 1583 (Fed. Cir. 1996).[6]

---

[4] *Id.*

[5] Tellingly, Comcast never suggested during the claim construction proceedings that the term
   "parsing" should be limited to ██████████████████████████████████████.

[6] ██████████████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████████████████████

Other technical and standard dictionaries further establish that the term "parsing" is not limited
   to ███████████████████████, either in the field or in general usage.   *See Webster's II*
   *New College Dictionary*, 800 (Houghlin Mifflin 1995) (defining "parse" to mean "to

Additionally, there is no support in the specification or prosecution history for limiting the term "parsing" to             *See Phillips*, 415 F.3d at 1312–13.  Nothing in the specification or the prosecution history indicates that "parsing" is ███

███████████████████████████████████.  Rather, the '916 patent states only that "parsing" is a process by which a telephone number is turned into a domain name[7]:

> Consideration will next be given to the parsing of a telephone number into a domain name—in other words, where to insert the "." characters into the number to provide the structuring of a domain name. Of course, as already explained, telephone numbers are hierarchically structured according to each country's numbering plan. Thus one approach would be to follow this numbering plan structuring in dividing up a telephone number to form a domain name. By way of example, the telephone number "441447456987" which is a UK number (country code "44") with a four digit area code ("1447") and six digit local number ("456987") could be divided to form a domain name of 456987.1447.44 (note that the reversal of label order occasioned by the fact that the DNS labels are arranged least significant first). If the telname space is a subdomain of the DNS with a placement as illustrated in FIG. 12B, the fully qualified domain name derived from the telephone number would be:

> 456987.1447.44.tel.itu.int.[8]

This process could easily be performed ████████, and nothing in the specification indicates otherwise.  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").  Therefore, the claim term

---

break (a sentence) down into component parts of speech with an analysis of the form, function, and syntactical relationship of each part" or "[t]o describe (a word) by stating the part of speech, form, and syntactical relationships within a sentence" (emphasis added)); *IEEE Standard Computer Dictionary: A Compilation of IEEE Standard Computer Glossaries*, 150 (Institute of Electrical and Electronics Engineers 1990) (defining "parse" to mean "[t]o determine the syntactic structure of a language unit by decomposing it into more elementary subunits and establishing the relationships among the subunits. For example, to decompose blocks into statements, statements into expressions, expressions into operators and operands" (emphasis added)).  Excerpted and relevant portions of the *Webster's* and *IEEE* dictionaries are attached hereto as Exhibits E and F, respectively.

[7] *See generally* Ex. A, at col. 18, ll. 30-66; col. 19, ll. 10-18.
[8] Ex. A, at col. 18, ll. 30–47.

**REDACTED - PUBLIC VERSION**

"parsing" should not be limited to ███████████████████████████ and Comcast's
attempt to exclude "parsing" performed ████████ from these claims fails as a matter of law.

### 2. The Claimed "URI" is Not Limited to the Syntactical Requirements Advocated by Comcast

Comcast also seeks to improperly limit the plain and ordinary meaning of another claim
term, "URI."  In particular, Comcast seeks to artificially restrict the plain and ordinary meaning
of the term "URI" to ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████[9]  The Court declined to adopt this unduly narrow definition of
URI when Comcast advanced it during the claim construction process, and the Court should
continue to reject this definition as unsupported by either the specification or other claim
construction evidence.[10]

Turning first to the specification, nowhere does the patentee's disclosure require that a
URI include the ████████████████ advanced by Comcast, ████████████████
████████████.  In the specification, the patentee introduces the term URI in broad terms and
limits any discussion ██████████████████ ██████████████████████ to an
*exemplary* URI known as an "absolute" URL.[11]  It is, of course, well-settled that claims should

---

[9] ████████████████████████

[10] After extensive briefing, the term URI ("Universal Resource Identifier" or "Uniform Resource
Identifier") was construed by this Court and afforded its plain and ordinary meaning.  *See*
D.I. 138, at 2.

[11] *See* Ex. A at col. 7, ll. 60 to col. 8, ll. 10.  "Absolute" URIs, as opposed to other URIs, require
a scheme and colon format. This requirement is clearly taught in the references cited by
Comcast and its expert, Dr. Burger, in support of Comcast's initial claim constructions.
*See* D.I. 81-10, at 4.  In point of fact, RFC 1630, which is cited in Dr. Burger's
declaration, distinguishes a "partial [or relative] form" URI from an "absolute form" URI,
noting "that [only] the latter must have a colon and that colon must occur before any
slash characters."  *See* D.I. 81-11, at 4–5; 8–9.  RFC 2396 also supports Dr. Burger's
original definition of URI.  *See* D.I. 81-12, at 2; D.I. 81-13, at 2 (defining "URI" as "a

REDACTED - PUBLIC VERSION

not be limited to exemplary embodiments disclosed in the specification, unless by express language. *See Phillips*, 415 F.3d at 1323.  In this case, the patentee did not claim an "absolute" URI, and there are no proper grounds for limiting the claims to an exemplary embodiment.

The extrinsic evidence also favors exclusion of Comcast's ████████████████. For example, Comcast and Dr. Burger identified at least three references during claim construction, attempting to establish the plain and ordinary meaning of URI in the field. Significantly, each of these references distinguishes between an "absolute" URI and other forms of URIs.[12]  These references clearly provide that only an "absolute form" URI requires a scheme and colon format, while other accepted URIs (known as "partial" or "relative" form URIs) lack such a format.[13]

Tellingly, the limitations Comcast now seeks to introduce are also contradicted by Comcast's original claim construction arguments, as well as previous sworn testimony of Dr. Burger.[14]  In particular, Comcast and Dr. Burger originally took that position that "URI" had a well-understood meaning of "a compact string of characters used to identify a resource accessible over a network."[15]  While Comcast now attempts to change its position in light of

---

compact string of characters for identifying an abstract or physical resource" and further stating that this meaning "defines the generic syntax of URI, including both absolute and relative forms"); *compare also, e.g.,* D.I. 81-13, at § 3 ("absolute URI") *with id.* at § 5 ("relative URI").

[12] *See id.*

[13] These references cited by Comcast are consistent with other extrinsic evidence.  *See, e.g., Hypertext Transfer Protocol-HTTP/1.0, HTTP Working Group Internet Draft*, T. Berners-Lee, *et al.*, Oct. 1995, p. 11, Section 3.2 – Universal Resource Identifiers, which is attached hereto as Exhibit G.  This reference states that "URIs in HTTP can be represented in absolute form or relative to some known base URI, depending upon the context of their use.  The two forms are differentiated by the fact that absolute URIs always begin with a scheme name followed by a colon."  *See id.* (emphasis added).

[14] *See* D.I. 81-10, at 3.  It is worth noting that Comcast only sought to use this narrowing definition after Sprint identified numerous substantial new questions of patentability in its reexamination request, including a new question based on the disclosure in RFC 1703.

[15] In his declaration, Dr. Burger also relied on three primary prior art references that supported his and Comcast's position that a "URI is a compact string of characters used to identify a

Sprint's invalidity challenges, Dr. Burger's original assessment of the plain and ordinary meaning of URI was correct in describing this term as "a compact string of characters used to identify a resource accessible over a network."[16]   Comcast cannot now avoid this "well-understood meaning" in the hopes of saving the validity of its claims.

The claim term "URI" does not require  Comcast's original definition for the term URI, "a compact string of characters used to identify a resource accessible over a network" reflects the plain and ordinary meaning of this term.   Applying this proper claim construction, RFC 1703 anticipates claim 45 for the reasons discussed below.

### 3. Applying the Proper Definitions of "Parsing" and "URI," RFC 1703 Anticipates Independent Claim 45

The Internet Engineering Task Force (IETF) develops and promotes Internet standards. During the late 1980s and early 1990s, the IETF published numerous Requests for Comments ("RFCs") describing techniques for using the "Domain Name System" ("DNS") of the Internet to enable communication with a target entity.[17]   One such IETF publication is RFC 1703, which is entitled "Principles of Operation for the TPC.INT Subdomain: Radio Paging -- Technical

---

resource accessible over a network."  *See* D.I. 81-10, at 4–5 (citing to "Uniform Resource Identifiers (URI): Generic Syntax and Semantics," RFC 1630, and RFC 2396).

[16]  During claim construction, Sprint questioned the precision of the term "compact," in the context of the proposed claim construction of URI.   However, the question of "compactness" is not at issue here because there can be no reasonable dispute that the identifiers disclosed in RFC 1703 constitute a "compact" string of characters for identifying network resources.

[17]  *See* D.I. 74-1, at 8–10.  Sprint's Reexamination Request states that RFCs 1183 and 1035 describe additional techniques for using the DNS that were well-known before the priority date of the '916 Patent.

REDACTED - PUBLIC VERSION

Procedures."  RFC 1703 was published in October of 1994,[18] but it was not considered during the original prosecution of the '916 patent.[19]

RFC 1703 teaches each and every limitation of, and therefore anticipates, claim 45 of the '916 patent.  In particular, RFC 1703 teaches the first step of claim 45: forming, from a number string identifying a target entity, a domain name by a process that includes parsing the number into a domain name.[20]  Specifically, RFC 1703 teaches that the domain name, e.g., "6.7.7.8.0.4.9.5.1.4.1.tpc.int" is formed by a process that includes reversing the telephone number string "1 415 940 8776" that identifies a radio pager, parsing the domain name into a number of domain labels by inserting periods where appropriate, and appending the "tpc.int" suffix.[21]

```
2.  Naming, Addressing, and Routing

    A radio pager is identified by a telephone number, e.g.,

      +1 415 940 8776

    where "+1" indicates the IDDD country code, and the remaining string
    is a telephone number within that country.

    In addition to a telephone number, a PIN may also be required to
    uniquely identify a radio pager.

2.1.  Addressing

    This number is used to construct the address of a radio paging
    server, which forms the recipient address for the message, e.g., one
    of:

        pager.ATOM@6.7.7.8.0.4.9.5.1.4.1.tpc.int
        pager-alpha.ATOM@6.7.7.8.0.4.9.5.1.4.1.tpc.int
        pager-numeric@6.7.7.8.0.4.9.5.1.4.1.tpc.int

    where "ATOM" is an RFC 822 atom [1], an opaque string for use in
    recipient identification when communicating with the paging network,
    and the domain-part is constructed by reversing the telephone number,
    converting each digit to a domain-label, and being placed under
    "tpc.int".  (The telephone number must not include any international
    access codes.)
```

---

[18] *See* Ex. B, at 1.
[19] *See* D.I. 92, at 44.
[20] *See* Ex. A, claim 45.
[21] *See* Ex. B, at 2.

REDACTED - PUBLIC VERSION

As discussed, Comcast and Dr. Burger suggest that RFC 1703 does not disclose the "parsing" step because ███████████████████████████████████████████████████ ████████████████████████████████████[22] However, as explained *supra*, the claimed "parsing" should not ████████████████████████████████████████ Under a proper construction of the claim's "parsing" requirement, ███████████████ satisfies the claim's requirements, and there can be no reasonable debate that RFC 1703 discloses the first step of claim 45.[23]

RFC 1703 also distinctly teaches the second step of method claim 45.  This step requires supplying the domain name formed to a DNS-type database system and receiving back a resource record including an URI for locating communications data associated with the domain name.[24]  Notably, RFC 1703 teaches that the formed domain name "6.7.7.8.0.4.9.5.1.4.1.tpc.int," is supplied to the DNS and a resource record (known as an MX record) is returned.  The identifier included in the MX resource record "dbc.mtview.ca.us" clearly fall within the definition of "URI" Comcast first advocated during the claim construction process, "a compact string of characters used to identify a resource accessible over a network."  Specifically, "dbc.mtview.ca.us" is a compact string of characters that identifies a paging server (*i.e.*, a "resource accessible over a network") that may be used to send pages to a pager (*i.e.*, a target entity).[25]

---

[22] ███████████████████████████

[23] ████████████████



[24] Ex. A, claim 45.

[25] *See* Ex. B, at 2–4.

REDACTED - PUBLIC VERSION

```
2.2.  Routing

   The message is routed in exactly the same fashion as all other
   electronic mail, i.e., using the MX algorithm [2].  Since a radio
   paging server might be able to access many radio pagers, the
   wildcarding facilities of the DNS [3,4] are used accordingly.  For
   example, if a radio paging server residing at "dbc.mtview.ca.us" is
   willing to access any radio pager with a telephone number prefix of

      +1 415 940

   then this resource record might be present

      *.0.4.9.5.1.4.1.tpc.int.        IN MX 10 dbc.mtview.ca.us.
```

Finally, RFC 1703 also teaches the final step of claim 45—using the URI received back to access said communications data. Specifically, RFC 1703 teaches that the retrieved URI ("dbc.mtview.ca.us") is used to send a page to the target entity and to access an email address associated with the phone number that was parsed into the domain name.[26]

```
(5)  Finally, the radio paging carry may choose to assign each of its
     customers a mailbox, e.g.,

          mrose@pager.pigeon.net

     which maps to the TPC.INT address for the customer's radio pager.

     The system(s) listed in the DNS for this domain would maintain
     the appropriate mail aliases for this mapping, e.g.,

          R: 220 pager.pigeon.net SMTP ready
          S: HELO malamud.com
          R: 220 pager.pigeon.net
          S: EXPN mrose
          R: 250 <pager-alpha.98765@18005551234.iddd.tpc.int>
```

Therefore, RFC 1703 teaches each step recited by claim 45. As to the second and third steps, ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

As explained *supra*, this argument must be rejected as a matter of claim construction, as the

---

[26] *See id.* at 7.

claimed URIs are not limited ███████████.  Therefore, no genuine factual issues preclude summary judgment that claim 45 of the '916 is invalid under 35 U.S.C §102.

### B.    RFC 1703 Anticipates Dependent Claims 47 and 48

Claim 47 recites, "wherein each said number string is a telephone number."[27]  This is met by RFC 1703's express disclosure of a pager that is identified by a telephone number that is parsed into a domain name.[28]  Claim 48 recites, "wherein the communications data is a communications endpoint address for the target entity."[29]  This claim is also met because RFC 1703 teaches email addresses and/or telephone numbers that serve as endpoint addresses for the target entity.[30]  Again, Dr. Burger's sole basis for disputing the anticipation of these claim limitations rest on his incorrect construction of URI.[31]  Therefore, no genuine factual issues preclude summary judgment that claims 47 and 48 of the '916 are invalid under 35 U.S.C §102.

### C.    Comcast Cannot Establish that Sprint Willfully Infringed the '916 Patent

To establish willful infringement, "a patentee must [first] show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  The objective prong of *Seagate* "tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."  *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010).  Importantly, the Federal Circuit has clarified that the objective prong is determined as a matter of law.  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) ("[T]he ultimate legal question of whether a reasonable person would have considered there to be a high

---

[27] Ex. A, claim 47.
[28] *See* Ex. B, at 2.
[29] Ex. A, claim 48.
[30] *See* Ex. B, at 7.
[31] ██████████████████

likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.").

Comcast cannot establish by clear and convincing evidence that Sprint's actions were objectively reckless because Sprint has advanced substantial invalidity defenses regarding the '916 patent.[32]  It is indisputable that Sprint has identified numerous prior art references that at least arguably anticipate or render obvious the asserted claims of the '916 Patent.[33]  These references, including RFC 1703, led the USPTO to grant Sprint's Reexamination Request for the '916 Patent, finding that numerous substantial new questions of patentability had been raised.[34]  These references also led the USPTO to issue non-final rejections[35] of claims 45, 47, and 48 based on double patenting,[36] anticipation by RFC 1703, and obviousness in light of multiple combinations of references.[37]  In view of this record, Comcast cannot meet its burden of proving by clear and convincing evidence that Sprint acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  *See Spine Solutions, Inc.*, 620 F.3d at 1319 (finding an accused infringer had relied on a reasonable defense of invalidity even though the jury found that one of skill in the art would not have found the combination at issue obvious).  Indeed, federal courts have expressly found such success before the PTO to establish a defense as reasonable. *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1377–78 (Fed. Cir. 2012) (affirming summary judgment of no willful infringement and listing

---

[32]  This includes Sprint's invalidity defense based on anticipation by RFC 1703, which is described at great length above.

[33]  *See generally* D.I. 74-1.

[34]  Specifically, the examiner based the present rejections of the asserted claims on five substantial new questions of patentability.  *See generally* Ex. C.

[35]  *See generally* Ex. C.

[36]  ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

[37]  ███████████████████████████

REDACTED - PUBLIC VERSION

the PTO's rejection of the asserted claims in a reissue application as a reason the accused infringer was not objectively reckless); *Pivonka v. Central Garden & Pet Co.*, No. Civ. A 02CV02394RPM, 2008 WL 486049, at *2 (D. Colo. Feb. 19, 2008) (granting summary judgment of no willful infringement because, during the pendency of the suit, the PTO had rejected all claims in reexamination).  Even viewing the evidence in a light most favorable to Comcast, Sprint is entitled to summary judgment of no willful infringement.

## VII.  CONCLUSION

Each and every limitation of claims 45, 47 and 48 of the '916 patent are found in the disclosure of the RFC 1703.  Accordingly, Sprint is entitled to entry of summary judgment that these claims are invalid as anticipated under 35 U.S.C § 102.  In addition, Comcast cannot meet the threshold objective prong of the Federal Circuit's willfulness test, and Sprint is entitled to summary judgment that it has not willfully infringed the '916 patent.

Dated: January 17, 2014

|  |  |
|---|---|
|  | */s/ Richard K. Herrmann* |
|  | Richard Herrmann (DE #405) |
| *Of counsel:* | Mary B. Matterer (DE #2696) |
|  | **MORRIS JAMES LLP** |
| B. Trent Webb (*pro hac vice*) | 500 Delaware Ave., Suite 1500 |
| Peter Strand (*pro hac vice*) | Wilmington, DE 19801-1494 |
| John Garretson (*pro hac vice*) | T: 302.888.6800 |
| Aaron Hankel (*pro hac vice*) | rherrmann@morrisjames.com |
| Ryan Schletzbaum (*pro hac vice*) | mmatterer@morrisjames.com |
| Ryan D. Dykal (*pro hac vice*) |  |
| Lynn C. Herndon (*pro hac vice*) |  |
| Lauren Douville (*pro hac vice*) |  |
| Albert F. Harris (*pro hac vice*) |  |
| Jordan Bergsten (*pro hac vice*) |  |
| **SHOOK, HARDY & BACON LLP** |  |
| 2555 Grand Boulevard |  |
| Kansas City, Missouri 64108-2613 |  |
| T: 816.474.6550 |  |

REDACTED - PUBLIC VERSION

Robert Reckers (*pro hac vice*)
Matthew C. Broaddus (*pro hac vice*)
Jared Tong (*pro hac vice*)
Fiona Bell (*pro hac vice*)
**SHOOK, HARDY & BACON LLP**
JPMorgan Chase Tower
600 Travis Street
Suite 3400
Houston, Texas 77002-2992
T: 713.227.8008
F: 713.227.9508

***Attorneys for Sprint***