IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMCAST IP HOLDINGS I, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SPRINT COMMUNICATIONS COMPANY L.P.;<br>SPRINT SPECTRUM L.P.; and<br>NEXTEL OPERATIONS, INC.,<br><br>    Defendants. | **PUBLIC - REDACTED VERSION**<br><br>C.A. No.: 1:12-cv-00205-(RGA)<br><br>**DEMAND FOR JURY TRIAL**<br><br>▬▬▬▬▬▬▬ |

**REPLY BRIEF IN SUPPORT OF SPRINT'S MOTION FOR SUMMARY JUDGMENT
THAT COMCAST'S CLAIMS AGAINST SPRINT'S USE OF ▬▬▬▬▬
PRODUCTS ARE BARRED BY LICENSE AND ESTOPPEL (D.I. 160-162)**

**MORRIS JAMES LLP**
Richard Herrmann (DE #405)
Mary B. Matterer (DE #2696)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
T: 302.888.6918
F: 302.571.1750
rherrmann@morrisjames.com
mmatterer@morrisjames.com

*Attorneys for Sprint Parties*

**SHOOK, HARDY & BACON LLP**
B. Trent Webb (*pro hac vice*)
Aaron Hankel (*pro hac vice*)
Ryan Schletzbaum (*pro hac vice*)
Ryan D. Dykal (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
T: 816.474.6550
F: 816.421.5547

Robert Reckers (*pro hac vice*)
Jared Tong (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, Texas 77002-2992
T: 713.227.8008
F: 713.227.9508

*Of Counsel*

Date: February 28, 2014

**Public version filed March 7, 2014**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

    I.    ■ Testimony, Documents, and Conduct Are Uncontroverted
This Evidence Shows That ■■■■■■■■■■■■■■■■■■■■■■■■ ..................2

        A.  Unchallenged evidence shows ■■■■■■ has the ■■■■■■■■
Chain-of-title is neither necessary nor material to Sprint's motion or
defenses ..............................................................................................................2

        B.  Sprint presented uncontroverted evidence regarding ■■■■■■
■
The ■■■■■■■■ corroborates Sprint's unchallenged evidence ................3

        C.  Comcast is wrong to describe ■ deposition testimony as "mistaken
shorthand"
Comcast conveniently ignores post-deposition discussions with ■ about
■■■■■■ ..........................................................................................................4

    II.   As a customer of licensed ■■■■■■ products, Sprint is also licensed
Seeking to dodge this straightforward result, Comcast ignores well-settled law ..............5

        A.  Comcast squarely accuses ■■■■■■ product of infringing its patents
But Comcast is bound by ■ earlier promise not to sue over these products ......5

        B.  The accused MGCs perform two-thirds of the claim steps
It is not reasonably disputed that they are encompassed by the license ..................8

    III.  The asserted Low patents "issued from" applications filed in 1995 and 1996
Comcast's attempted distinctions lack legal citation and logical support .......................9

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

CASES                                                                                                                                  PAGE(S)

*General Protecht Gp. Inc. v. Leviton Mfg. Co.*,
   651 F.3d 1355 (Fed. Cir. 2011)..................................................................................................9

*Lexington Ins. Co. v. W. Pa. Hosp.*,
   423 F.3d 318 (3d Cir.2005)........................................................................................................6

*Motorola, Inc. v. Analog Devices, Inc.*,
   2004 WL 5633740 (E.D. Tex. Aug. 10, 2004) ....................................................................9, 10

*Podobnik v. US Postal Service*,
   409 F. 3d 584 (3rd Cir. 2005) ....................................................................................................4

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009)..................................................................................................7

*Wooleyhan V. Cape Henlopen School District*,
   2011 WL 1875710 (D.Del. May 17, 2011)................................................................................6

*Zenith Elecs. Corp. v. PDI Commc'n, Sys., Inc.*,
   522 F.3d 1348 (Fed. Cir. 2008)...............................................................................................6, 7

**INTRODUCTION**

Comcast does not dispute any of the material facts set forth in Sprint's motion. Nor did it identify record evidence reflecting any genuine dispute over these material facts. Instead, Comcast's opposition simply challenges the <u>quantum</u> of Sprint's uncontroverted record evidence, as well as Sprint's <u>application</u> of well-settled law to these unchallenged facts.

In responding to Sprint's motion, Comcast was required to come forward with evidence militating against summary judgment. Instead, Comcast raises a list of supposedly-unanswered "factual questions."[1] Comcast could have answered these "questions" long ago, but chose not to.



Comcast has ▮▮▮▮▮ about ▮ prior licensing activities.[2] Despite this, Comcast did not ask any of its "questions" it now raises during its ▮▮▮▮ with ▮ or during its ▮▮▮▮ acquisition of the related Low patents just nine months ago—a deal that was struck while Comcast was busy developing and asserting its infringement theories in this case *specifically against Sprint's use of* ▮▮▮▮. Still further, Comcast declined to ask any of these "questions" during ▮ deposition just a few months ago—choosing not to examine ▮ witness about the damaging testimony it now disparages as "mistaken shorthand."[3] Finally, during negotiations over ▮ production of the "▮▮▮▮" license, Comcast once again failed to ask any of these "questions" it now asserts are central to the disposition of its license rights. As a result, there is no record evidence demonstrating a genuine dispute over the material facts.

---

[1] *See* D.I. 188, Comcast Answering Br. (Licensing/Estoppel) at 2 ("Ans. Br.").

[2] *See* D.I. 166, Hankel Dec., Exhibit J (Comcast's August 26, 2013 Response to Sprint's Interrogatory No. 14). Comcast has recently supplemented its response reiterating that it is "not aware of any license" covering its patents, as well as its "referral of Sprint to ▮ for [such] information." *See* **Exhibit Q** attached to the Declaration of Aaron Hankel filed concurrently herewith**,** Comcast's Supplemental Response to Interrogatory No. 14 (February 21, 2014).

[3] *See* D.I. 188, Ans. Br. at 14.

1

Sprint has identified uncontroverted evidence and unchallenged facts supporting its licensing and estoppel defenses. Because Comcast cannot produce any evidence supporting its speculative factual theories, Sprint is entitled to summary judgment that [REDACTED] and that Comcast's claims are barred by license and estoppel.

## ARGUMENT

Comcast's opposition presents two types of argument. The first type seeks to dispute the evidence with imagined scenarios focusing on immaterial issues. The second type challenges Sprint's application of the law to facts that even Comcast acknowledges have been established.

### I. [REDACTED] Testimony, Documents, and Conduct Are Uncontroverted This Evidence Shows That [REDACTED] Obtained [REDACTED]

The issue here is whether [REDACTED]  As set forth in Sprint's motion, the record demonstrates there is no dispute over [REDACTED] supported by evidence. Comcast opposes this uncontroverted evidence by focusing on _immaterial_ issues (chain-of-title) and _imagined_ facts (e.g., asking what "could have" or "might have" been). Neither attack defeats summary judgment.

#### A. Unchallenged evidence shows [REDACTED] has the earlier license rights Chain-of-title is neither necessary nor material to Sprint's motion or defenses

Comcast's opposition demands Sprint re-create the individual intra-company transfers that ultimately resulted in [REDACTED].[5] But those transactions are immaterial to the crux of Sprint's licensing and estoppel defenses—namely, that Sprint's vendor of accused equipment, [REDACTED], now enjoys the rights [REDACTED] granted to its successors. And on this material issue, Sprint's evidence is uncontroverted and its facts

---

[4] [REDACTED]  _See_ D.I. 166, Hankel Dec. Exhibit D at §§ 1.01(b), 4.02. _See_ D.I. 188, Ans. Br. at 11-12.

Case 1:12-cv-00205-RGA   Document 216   Filed 03/07/14   Page 6 of 14 PageID #: 11904

unchallenged:



- ■ **Testimony.** Sprint's motion identified unchallenged deposition testimony of corporate witness confirming that ■ had a ■ with ■;

- ■ **Documents.** ■ produced the ■ with ■ after the deposition, which Sprint attached as Exhibit D to its motion (executed before the formation of ■, the ■ identifies ■, including ■ and ■ (*see* D.I. 162, Ex. D); and

- ■ **Conduct.** In both ■ and ■ (as this case was pending), ■ rejected Comcast's requests to include ■ on the ■.[6]

This is the record. And aside from bald argument, it is not challenged.

Instead of responding with evidence of its own, Comcast attempts to shift the focus to a chain-of-title exercise questioning exactly how and from which corporate sub-entity ■ ■ acquired its rights.[7] But those issues are not material to Sprint's defenses because Sprint's defenses rest on its use of equipment from ■ licensed by ■ in exchange for valuable consideration. The record evidence is unchallenged on the issue of ■ ■ under the ■.

While Comcast is free to imagine any fact it wants (e.g., hypothetical "tax savings" regarding the license rights), such speculation is not supported by or consistent with the record. Comcast could have developed during discovery the facts it now posits, for example, by exploring any defects in the chain-of-title or tax strategies at ■. But it chose not to. As a result, it has not produced any evidence to support the uncertainties it seeks to manufacture.

    B. **Sprint presented uncontroverted evidence regarding ■ status The "■ exchange corroborates Sprint's unchallenged evidence**

Comcast is correct in noting that the "■ evidence, <u>standing alone</u>, "does not

---

[6] *See* D.I. 161, Sprint Br. at 6-10.
[7] *See* D.I. 188, Ans. Br. at 11-12.

3

establish that ▮ was in fact licensed to any such rights...."[8] But Sprint did not rely on the ▮ evidence alone. Instead, it pointed out these telling discussions because they corroborate Sprint's unchallenged testimonial and documentary evidence.[9] Comcast itself admits this evidence "suggests" that ▮ might be ▮.[10]

To counter the natural conclusion from this evidence, Comcast hypothesizes "facts" where none exist. Such unsupported allegation of what "could," "should," or "might have" been do not defeat summary judgment.[11] *See Podobnik v. US Postal Service*, 409 F. 3d 584, 594 (3rd Cir. 2005) (the nonmoving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (quotation omitted).

### C. Comcast is wrong to describe ▮ deposition testimony as "mistaken shorthand" Comcast conveniently ignores post-deposition discussions with ▮ about ▮

Notwithstanding Comcast's mischaracterization that the substance of the ▮ deposition testimony is actually disputed, ▮ witness confirmed that the ▮ now rest with ▮.[12] There is no real dispute on this issue.

Shortly after the deposition, Sprint asked ▮ when it would receive the ▮

---

[8] *See* D.I. 188, Ans. Br. at 12.
[9] These discussions also highlight that Comcast knew its patent purchases would have to be subject to ▮ prior ▮—a fact Comcast now seeks to minimize or dismiss altogether.
[10] *See* D.I. 188, Ans. Br. at 12 (admitting that the



). Comcast's attempts to marginalize ▮ understanding are difficult to understand. As noted above, Comcast has gone to great lengths to disclaim any knowledge of ▮, despite having paid for some of the subject patents during this litigation and possessing a clear incentive to understand what it was purchasing. Instead, Comcast claimed to know nothing for purposes of this case and deferred to ▮ ▮ was deposed, and its witness confirmed the ▮

*See* D.I. 188, Ans. Br. at 12 ("▮ refusal ... could have been attributable to a lack of information...."); *id.* ("▮ refusal could have been grounded in uncertainty as to how [the ▮ would or should be interpreted...."); *id.* at 12-13 ("▮ refusal ... might have had nothing to do with the asserted Low Patents...").
[12] *See* D.I. 161, Sprint Br. at 10; *see also* D.I. 166, Exhibit P at 96:9 to 97:5.

4

■ first disclosed during the October 15 deposition.¹³ ■ responded, explaining to both Sprint and Comcast that it would produce the ■ but only after securing the necessary consent.¹⁴ A few weeks later, ■ confirmed that ■ had consented to its production of the ■.¹⁵ This ■ was attached to Sprint's motion as Exhibit D. As these discussions show, ■ deposition testimony was anything but "mistaken" or "shorthand."

## II. As a customer of ■, Sprint is also licensed
Seeking to dodge this straightforward result, Comcast ignores well-settled law

### A. Comcast squarely accuses ■ of infringing its patents But Comcast is bound by ■ earlier promise not to sue over these products

Comcast argues that Sprint has provided "absolutely no competent evidence concerning its purported purchase or lease" of ■. This is difficult to understand, because Sprint's motion largely relied on <u>Comcast's infringement report</u> to demonstrate the lack of a dispute concerning these purchases. Comcast's report itself relies on the testimony of various Sprint personnel, who all testified under oath as to these facts,¹⁶ including Nicolas Nehme.¹⁷ Sprint also provided other evidence, *see* D.I. 166, Ex. C, which Comcast dismisses as inadmissible hearsay.¹⁸ While Sprint disagrees, the point is moot—the record submitted with Sprint's motion shows that these facts will be presented in an admissible form at trial, including through testimony like Mr. Nehme's and other Sprint personnel deposed in this case.¹⁹ *See*

---

¹³ See **Exhibit R**, October 21, 2013, Emails Between Sprint, Comcast, and ■ Counsel at 2.
¹⁴ See *id.* at 1.
¹⁵ See **Exhibit S**, October 30, 2013, Emails Between Sprint, Comcast, and ■ Counsel at 1.
¹⁶ See D.I. 166, Hankel Dec., Exhibit A at 23 (discussing ■ ).
¹⁷ See Exhibit B, Nehme Tr. at 32:13-17 :14-19 (■ *id.* at 138:1-6 (testifying that the accused "■ system is just "another name for the ■ MGC in Sprint's network").
¹⁸ See D.I. 188, Ans. Br. at 14, fn. 50.
¹⁹ *Supra* fn. 17; *see also, e.g.*, **Exhibit T**, Manifold Tr. at 71:14-19 (■ ).

*Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 329 n. 6 (3d Cir.2005) (citation omitted); *see also Wooleyhan V. Cape Henlopen School District*, 2011 WL 1875710, *23 (D.Del. May 17, 2011) ("Generally, inadmissible evidence can be considered on summary judgment so long as it is capable of being presented in an admissible form at trial.") (Baylson, J.).  Notably, Comcast has not withdrawn or disavowed its report, or the infringement allegations it contains.

Comcast's professed confusion over "which entity" sold the accused product ignores the practical realities in this case:  1) the '008 Patent did not issue until May 2012, long after ▬▬▬▬▬ began supplying Sprint's accused MGCs; and 2) Sprint has yet to implement the accused functionality in its recently purchased MSCe platforms (again bought long after ▬▬▬▬▬▬▬▬).

Further, Comcast's demand for so-called "conveyance" evidence ignores the fact that Sprint is licensed by virtue of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[20]  *See Zenith Elecs. Corp. v. PDI Commc'n, Sys., Inc.*, 522 F.3d 1348, 1360 (Fed. Cir. 2008).  In *Zenith*, the patent owner issued licenses to makers of pillow speakers and remote controls.  The accused infringer, PDI, sold televisions designed to work with pillow speakers manufactured by the Zenith licensees.  Zenith asserted one of its patents covering methods of operating a television with a pillow speaker and claimed PDI infringed by operating PDI televisions with the licensed pillow speakers.  *Id*. at 1353.  On summary judgment, the district court ruled that purchasers of pillow speakers from Zenith licensees "obtain an implied license under the [asserted] patent to use the pillow speakers in combination with any compatible television—not just Zenith televisions."  *Id*. at 1360.  The Federal Circuit affirmed, because "the implied license that

---

[20] Notably, Comcast itself has recently moved for summary judgment on this precise issue in an unrelated case in this district.  *See* D.I. 236 at 17-18, *Comcast Cable Commc'n., LLC* et al. *v. British Telecom. PLC*, Case No. 11-cv-843-SLR.  The motion is pending.

customers obtain to use pillow speakers according to the method of the [asserted] patent is derived from the express licenses between Zenith and those manufacturers." *Id*. at 1306-1361.

    <u>This is exactly the case here</u>.  First, as in *Zenith*, ▮ granted a "clear, broad grant of patent rights" that now rest with ▮▮▮.  ▮▮▮▮▮▮▮, which includes the asserted Comcast patents.  Second, again as in *Zenith*, ▮▮▮▮▮▮.  As a result, Sprint is licensed by virtue of ▮▮▮▮▮.

    Further, Comcast's demand for evidence reflecting an affirmative conveyance to use ▮ equipment misstates the law.  A patent grants its owner a right to exclude, such that a patent license is by definition just a promise not to sue seeking to exclude the licensees from practicing the patent.  *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009).  "It follows, therefore, that a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit." *Id.* (emphasis added).  This distinction is important, as it is not reasonably disputed that ▮ promised not to sue ▮▮▮▮.[21]  Nor is it disputed that Comcast acquired the asserted Low patents ▮▮▮.[22]  These promises reflect Sprint's licensed use or, at a minimum, an improper attempt to derogate from previously bargained-for rights.[23]

---

[21] *See* D.I. 161, Sprint's Br. at 6-8; *see also* D.I. 166 at Exhibit D at §§ 1.01(b) and 1.03(a).
[22] *See* D.I. 161, Sprint's Br. at 9, fn. 33; *see also* D.I. 166 at Exhibit G at § 2.1.
[23] *See* D.I. 161, Sprint's Br. at 15-17 (Comcast's infringement theories seek to derogate from previously bargained-for rights that, importantly, Comcast itself used to negotiate the purchase price of the asserted patents).

7

B. **The accused MGCs perform two-thirds of the claim steps**
   <u>**It is not reasonably disputed that they are encompassed by the license**</u>

During claim construction, the Court agreed with Comcast's proposed construction for the term "switched telecommunications system."[24] As construed, the claimed "switched telecommunications system" may include datagram-based elements but also must "<u>at a minimum ... have switches and function on a bearer network</u>."[25] As a result, Comcast's infringement theories for the '008 Patent target Sprint's use of ▇▇▇▇▇▇▇▇▇▇▇▇—that is, the device that bridges Sprint's accused "switched" network (i.e., Sprint's CDMA/wireless network) to the accused datagram-based network (i.e., Sprint's IMS network). The accused MGCs in this case provide the bridging functions required by the Court's construction—namely, linking switched and datagram-based networks. Comcast cannot now contend that these features are somehow trivial to the invention, particularly after relying on the substantial and significant impact of the required "switched telecommunication system" during reexamination—arguments expressly relied on by the Patent Office in its decision to issue a reexamination certificate for these claims.[26]

Finally, it is worth noting that this specific issue only applies to the ▇▇▇▇▇▇▇ MGC accused of infringing the '008 Patent. Importantly, it does not at all impact the Court's analysis regarding Comcast's prospective theories involving Sprint's PJ6767 project, if and when that project is ever implemented.

---

[24] D.I. 123, Markman Order at 2-3.

[25] *Id.* (emphasis added). In other words, no reasonable jury could find for Comcast on this substantiality and significance of the accused MCG platforms within the context of the claimed inventions <u>without first rejecting the Court's construction of the term "switched telecommunication system."</u>

[26] *See* **Exhibit U**, Comcast's October 16, 2013, Reexamination at 6, 35-38, and 50-52 (arguing that prior art RFC1183 and Patel references failed to teach the "receiving" and "initiating" limitations); **Exhibit V**, January 31, 2014, Notice of Intent to Issue Reexam Certificate at 6 and 8-9 (accepting these arguments).

**III.    The asserted Low patents ▮▮▮▮▮ applications filed in 1995 and 1996 Comcast's attempted distinctions lack legal citation and logical support**

The issue here is whether asserted Low patents were encumbered by the ▮▮▮▮▮. In other words, did the asserted Low patents ▮▮▮▮▮ ▮▮▮▮▮ The answer is yes, as they all claim priority to applications filed long before the relevant date. Indeed, but for those priority claims, none of the patents would have issued.

Comcast, of course, disagrees. Sprint will focus on the law, as Comcast's speculation over the licensing parties' intentions lacks any support in the record.[27] As explained in Sprint's opening brief, the Federal Circuit has held that such continuation patents are <u>presumed</u> encumbered "absent a clear indication of mutual intent to the contrary." *See General Protecht Gp. Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361-62 (Fed. Cir. 2011). ▮▮▮▮▮ ▮▮▮▮▮ Nor does Comcast even try to produce any such evidence. As a result, the law is clear—Comcast's patents are presumed to be encompassed by the ▮▮▮ ▮▮▮▮.

Comcast tries to distinguish this controlling authority by focusing on a legally irrelevant distinction; namely, that this case involves a ▮▮▮▮ instead of a ▮▮▮▮▮. Not only does this distinction lack support in Federal Circuit case law, it has also been squarely rejected in other cases addressing this issue.

For example, in *Motorola, Inc. v. Analog Devices, Inc.*, the court flatly rejected Comcast's purported distinction. 2004 WL 5633740, *4 (E.D. Tex. Aug. 10, 2004). In *Motorola*, ▮▮▮ the dispute centered on a portfolio cross-license covering patents that were "issued or applied for as of" a particular date (January 1, 1988). *Id.* And in *Motorola*, ▮▮▮

---

[27] *See* D.I. 188, Ans. Br. at 17 (speculating over ▮▮▮▮▮▮▮).

9

the patentee sought to exclude its patents from the broad reach of the earlier license grant by arguing that its patents technically issued from applications filed after the relevant date. *Id.* Finding this argument to be "capricious," "unreasonable," and inconsistent with the priority claiming, the *Motorola* court explained:

> [I]t seems <u>unreasonable</u> to find that the parties intended that the rights in various pending applications which were reciprocally granted on January 1, 1988, could be <u>capriciously</u> disavowed by the filing of continuation applications on January 2. This is especially true when a continuation application could be identical to the original. If ADI's interpretation is accepted, the reneging party would get a new 'filing date,' thus voiding the license, but also retain the benefits of the earlier priority date under 35 U.S.C. § 120. ... A fair and reasonable interpretation of the agreement does not lead to a conclusion that the parties intended that either Motorola or ADI could, by the simple subterfuge of filing a continuation application, weasel out of their agreement as to an application for an invention which might suddenly have become profitable.

*See Motorola, Inc. v. Analog Devices, Inc*., 2004 WL 5633740, *4 (E.D. Tex. Aug. 10, 2004).

Comcast's rejected distinction fails to defeat summary judgment here.

## **CONCLUSION**

For the foregoing reasons,, Sprint is entitled to summary judgment that Comcast's infringement claims against Sprint's use of ▮▮▮▮▮▮▮ products are barred by express and implied license (estoppel).

Dated: February 28, 2014

| | |
|---|---|
| B. Trent Webb (*pro hac vice*) |   */s/ Richard K. Herrmann* |
| Aaron Hankel (*pro hac vice*) | Richard Herrmann (DE #405) |
| Ryan Schletzbaum (*pro hac vice*) | Mary B. Matterer (DE #2696) |
| Ryan D. Dykal (*pro hac vice*) | **MORRIS JAMES LLP** |
| **SHOOK, HARDY & BACON LLP** | 500 Delaware Ave., Suite 1500 |
| 2555 Grand Boulevard | Wilmington, DE 19801-1494 |
| Kansas City, Missouri 64108-2613 | T: 302.888.6918 |
| T: 816.474.6550 | F: 302.571.1750 |
| F: 816.421.5547 | rherrmann@morrisjames.com |
| | mmatterer@morrisjames.com |

Robert Reckers (*pro hac vice*)
Jared Tong (*pro hac vice*)          *Attorneys for Sprint Parties*
**SHOOK, HARDY & BACON LLP**
600 Travis Street, Suite 3400
Houston, Texas 77002-2992
T: 713.227.8008
F: 713.227.9508

*Of Counsel*

11