## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COMCAST IP HOLDINGS I, LLC,

               Plaintiff,

v.

SPRINT COMMUNICATIONS COMPANY L.P.;
SPRINT SPECTRUM L.P.; and
NEXTEL OPERATIONS, INC.,

               Defendants.

C.A. No.: 1:12-cv-00205-RGA

**DEMAND FOR JURY TRIAL**

███████████████

**PUBLIC - REDACTED VERSION**

## OPENING BRIEF IN SUPPORT OF SPRINT'S MOTION TO EXCLUDE THE SUPPLEMENTAL EXPERT REPORT OF JEFFREY S. DWOSKIN AND CERTAIN PORTIONS OF THE EXPERT REPORT OF CARLA S. MULHERN

**SHOOK, HARDY & BACON LLP**

B. Trent Webb (*pro hac vice*)
John D. Garretson (*pro hac vice*)
Aaron E. Hankel (*pro hac vice*)
Ryan J. Schletzbaum (*pro hac vice*)
Ryan D. Dykal (*pro hac vice*)
Lynn C. Herndon (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
T: 816.474.6550
F: 816.421.5547
bwebb@shb.com, jgarretson@shb.com
ahankel@shb.com, rschletzbaum@shb.com
rdykal@shb.com, lherndon@shb.com


Robert H. Reckers (*pro hac vice*)
Matthew C. Broaddus (*pro hac vice*)
Jared M. Tong (*pro hac vice*)
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002-2992
T: 713.227.8008
F: 713.227.9508
rreckers@shb.com
mbroaddus@shb.com
jtong@shb.com

**MORRIS JAMES LLP**

Richard Herrmann (DE #405)
Mary B. Matterer (DE #2696)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
T: 302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

**McGuireWoods LLP**

David E. Finkelson (*pro hac vice*)
Brian C. Riopelle (*pro hac vice*)
One James Center
901 East Cary Street
Richmond, VA 23219-4030
T: 804.775.1000
F: 804.698.2150
dfinkelson@mcguirewoods.com
briopelle@mcguirewoods.com


Rachelle H. Thompson (*pro hac vice*)
434 Fayetteville Street, Suite 2600
Raleigh, NC 27601-7507
T: 919.755.6600
F: 919.755.6591
rthompson@mcguirewoods.com


*Attorneys for Sprint*

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

III.    SUMMARY OF THE ARGUMENT ............................................................ 2

IV.     STATEMENT OF THE FACTS ................................................................... 4

        A.      The Parties' Written Discovery Demands ......................................... 4

        B.      Comcast's Default Standard Rule 4 Disclosures ............................... 5

        C.      Comcast's First Technical Expert Report ......................................... 7

        D.      Comcast's Post-Discovery Demands ................................................. 8

        E.      Comcast's Supplemental Technical Expert & Damages Reports ........ 9

V.      ARGUMENT ............................................................................................... 10

        A.      Standard for Exclusion ..................................................................... 10

        B.      The Supplemental Dwoskin Report Violates the Court's Scheduling
                Orders ................................................................................................ 12

        C.      The New Devices Were Not Properly Accused ................................ 13

        D.      Comcast's Non-Infringing Alternative Theory is Untimely .............. 14

        E.      Sprint's Motion to Exclude Should Be Granted ............................... 15

                1.      The *Pennypack* Factors Are Satisfied ................................... 15

                2.      Excluding the Expert Reports Is the Appropriate Remedy .... 20

VI.     CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Lupin Ltd.*,
   No. 09-152-LPS, 2011 U.S. Dist. LEXIS 53846 (D. Del. May 19, 2011) ..................8, 11, 18

*Chimie v. PPG Indus., Inc.*,
   303 F. Supp. 2d 502 (D. Del. 2004) ..............................................................................10, 15

*EON Corp. IP Holdings LLC*,
   No. 10-812 (RGA), 2013 U.S. Dist. LEXIS 155959 (D. Del. Aug. 28, 2013) ......................14

*Konstantopoulos v. Westvaco Corp.*,
   112 F.3d 710 (3d Cir. 1997) ...............................................................................................11

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
   No. 09-80-LPS-MPT, 2013 U.S. Dist. LEXIS 70745 (D. Del. May 20, 2013) ...............11, 15

*Monsanto Co. v. Aetna Casualty & Surety Co.*,
   No. 88C-JA-118, 1990 Del. Super. LEXIS 421 (Del. Super. Ct. Dec. 4, 1990) ...................10

*Praxair, Inc. v. ATMI, Inc.*,
   231 F.R.D. 457 (D. Del. 2005) ......................................................................................11, 15

*Reid v. Lockheed Martin Aeronautics Co.*,
   205 F.R.D. 655 (N.D. Ga. 2001) ..........................................................................................20

*Round Rock Research v. Lenovo Group*,
   No. 11-1011-RGA, slip op. at 1 (D. Del. June 14, 2013) ......................................................13

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005) .....................................................................................10, 12

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*,
   No. 04-1426, 2012 U.S. Dist. LEXIS 40103 (D. Del. Mar. 26, 2012) ................11, 16, 17, 18

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) ................................................................................................11

*Trilogy Commc'ns Inc. v. Times Fiber Commc'ns Inc.*,
   109 F.3d 739 (Fed. Cir. 1997) .............................................................................................17

*Walker Digital, LLC v. Google, Inc., et al.*,
   No. 11-309-SLR, 2013 U.S. Dist. LEXIS 83860 (D. Del. June 14, 2013) ............................13

**FEDERAL RULES**

Fed. R. Civ. P. 16(f) ...........................................................................................................10, 11, 20

Fed. R. Civ. P. 26(a) ...........................................................................................................10, 12

Fed. R. Civ. P. 26(e) ...........................................................................................................20

Fed. R. Civ. P. 37 ...........................................................................................................10, 11, 20

**LOCAL RULE**

Default Standard for Discovery Rule 4 ................................................................................ *passim*

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 16(f), 26(a), and 37(c)(1), Sprint Communications Company L.P., Sprint Spectrum L.P., and Nextel Operations, Inc. (together, "Sprint"), move to exclude (i) the Supplemental Expert Report of Jeffrey S. Dwoskin and (ii) certain portions of the Expert Report of Carla S. Mulhern that allege damages in connection with the alleged infringement of  U.S. Patent No. 6,873,694 (the "'694 Patent").

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On February 21, 2012, Comcast IP Holdings I, LLC ("Comcast") filed suit against Sprint, alleging infringement of four patents.  (D.I. 1.)  Three months later, Comcast filed an Amended Complaint alleging infringement of two additional patents.  (D.I. 22.)  On October 3, 2012, Comcast filed another Amended Complaint, alleging infringement of two more patents, bringing the total number of Comcast patents-in-suit to eight.  (D.I. 59.)  On September 13, 2013, Comcast withdrew its allegations of infringement as to four of the asserted patents.  The remaining four patents asserted by Comcast are U.S. Patent Nos. 7,012,916, 8,170,008, 8,204,046, and the '694 Patent.  Relevant to this motion is the '694 Patent.

Comcast filed its initial Default Standard for Discovery (the "Default Standard") Rule 4(a) disclosures on August 20, 2012 (D.I. 47), and amended them twice over the next few months (D.I. 60, 64) choosing each time to accuse "Sprint's wireless telephony products and services that support both voice and data" and not individual handsets.  On November 2, 2012, Comcast served disclosures pursuant to Default Standard Rule 4(c), which referred to four devices that allegedly infringe the '694 Patent.  (D.I. 63.)   On September 20, 2013, Comcast served the expert report of Jeffrey S. Dwoskin, which referred to four additional devices that allegedly infringe the '694 Patent.  (D.I. 141.)  In sum, as of the close of discovery on March 14,

2014, Comcast had identified eight devices as allegedly infringing the '694 Patent.

On May 2, 2014, the date on which opening expert reports for damages were due to be served, Comcast served a supplemental technical expert report prepared by Dr. Dwoskin along with its expert report on damages.  (D.I. 229.)  Dr. Dwoskin's supplemental report identified an additional 36 devices as allegedly infringing the '694 Patent, above and beyond those identified prior to the close of discovery.  Dr. Dwoskin's supplemental report also indicated that ███████ ████████████████████████████████████████ Certain portions of Ms. Mulhern's report that address the '694 Patent relied on both Dr. Dwoskin's identification of the additional 36 devices and his opinion regarding ███████████████████████████████

This matter is currently in the damages discovery phase, with summary judgment briefing on damages-related issues scheduled for July 11, 2014.  A final pretrial conference is scheduled for September 15, 2014, and trial is scheduled for October 6, 2014.

III.   SUMMARY OF THE ARGUMENT

Comcast accuses 42 handset devices sold by Sprint of infringing the '694 Patent. Comcast's disclosure and identification of a majority of these devices has been untimely, in violation of this Court's Orders, and prejudicial to Sprint, and therefore these devices should be excluded from the case.

In March and June 2013, Sprint produced documents detailing the specifications for certain handsets that it sells or sold.  Despite this information,

- Comcast never identified any of Sprint's handsets as allegedly infringing in Comcast's Default Standard 4(a) disclosures;

- Comcast never provided infringement claim charts for any of the allegedly infringing handsets in its Default Standard 4(c) disclosures;

- Comcast never identified any of Sprint's handsets as allegedly infringing in its responses to Sprint's interrogatories requesting that information; and

- Comcast's technical expert, Dr. Dwoskin, only referred to four handset devices in his timely expert reports.

But then, on May 2, 2014, eight months after the issuance of his initial expert report and nearly two months after the close of discovery, Dr. Dwoskin issued a supplemental expert report without Sprint's consent or leave from this Court. In this untimely expert report, Dr. Dwoskin and Comcast for the first time identified 36 devices (the "New Devices") that allegedly infringe the '694 Patent.[1] In addition, Dr. Dwoskin introduced a previously undisclosed theory for a non-infringing alternative. Comcast's damages report, also issued on May 2, relies on the untimely identified devices and non-infringing alternative theory.

Comcast had the information to identify the New Devices since March and June 2013, long before discovery closed. Comcast's failure to abide by this Court's Scheduling Order, disclosure requirements, and discovery obligations, and its subsequent filing of a supplemental expert report without Sprint's consent or leave of this Court should not be tolerated. Moreover, the untimely assertion of the 36 additional devices prejudices Sprint, as Sprint was unable to explore non-infringing positions during discovery and Sprint's technical expert was unable to respond to these new and untimely assertions in his report.

Accordingly, Sprint requests that Dr. Dwoskin's supplemental expert report be excluded, that those portions of Comcast's damages expert report that rely upon Dr. Dwoskin's

---

[1] The Supplemental Dwoskin Report also addresses six devices that had previously been disclosed, or at least referenced in some form or another, by Comcast. (*See* Declaration of Brian C. Riopelle ("Riopelle Decl."), Ex. A, Supplemental Expert Report of Jeffrey S. Dwoskin, May 2, 2014 (the "Supplemental Dwoskin Report"), at Exhibit C.) For ease of reference, Sprint has attached as Appendix I an annotated version of the chart of accused devices from the Supplemental Dwoskin Report, which includes the dates of production for all documentary "Evidence of Infringement" cited in Dr. Dwoskin's chart as well as notes regarding the date and manner of prior disclosure, if any, for each device.

supplemental expert report be excluded,[2] and that Comcast be precluded from presenting evidence on any device not identified as allegedly infringing until after the close of discovery.

## IV.   STATEMENT OF THE FACTS

### A.   The Parties' Written Discovery Demands

Comcast initially misunderstood the scope of the '694 Patent, as evidenced by its First Set of Requests for Production and Second Interrogatories.  In those documents, Comcast defined "Accused Sprint Products and Services" as follows:

> The term "Accused Sprint Products and Services" includes Sprint's wireless telephony services, Sprint's Wholesale telephony services, Sprint's enterprise and business voice products and services, Sprint's SMS products and services for wireless, Sprint's MMS products and services for wireless, Sprint Unified Communication, Sprint Collaboration services that provide voice, telephony, conferencing, and messaging services, and Sprint's mobile services and applications using Sprint Web Services, Sprint Services Framework, Sprint Premium Messaging Gateway and Sprint Business Mobility Framework.  (*See* Riopelle Decl. Ex. C, Comcast's First Set of Requests for Production to Sprint ("Comcast's 1st RFPs").)[3]

Notably, Comcast mistakenly accused Sprint's network, and not individual handsets, of infringing the '694 Patent.

Comcast sought documents regarding "Accused Sprint Products" in document requests 55 and 58 and interrogatories 19 and 20.  (*See id.* Ex. E, Comcast's Second Set of Requests for Production to Sprint; *id.* Ex. F, Comcast's Second Set of Interrogatories to Defendants Sprint

---

[2] Specifically, Sprint believes that, at the very least, the following paragraphs of the Expert Report of Carla S. Mulhern, along with Exhibit 36 (which summarizes the devices accused of infringing the '694 Patent) should be excluded based on their respective reliance on or reference to the untimely Dwoskin report: ¶¶ 5, 112, 170-177, 211, 213, 228, and 230.  (*See* Riopelle Decl. Ex. B, Expert Report of Carla S. Mulhern, May 2, 2014 (the "Mulhern Report").)

[3] Sprint objected to this definition "as overly broad, vague, ambiguous, and unduly burdensome to the extent it encompasses products, services, or applications which are not relevant to the claims or defenses of the parties to this lawsuit or requires a response that will not reasonably lead to the discovery of relevant or admissible evidence."  (*See* Riopelle Decl. Ex. D, Sprint's Objections and Responses to Comcast's First Set of Requests for Production.)

Communications Company L.P., Sprint Spectrum L.P., and Nextel Operations, Inc.)   Sprint objected to each of these requests as, *inter alia*, overbroad and unduly burdensome based in part on their respective reliance on the overbroad definition discussed above. (*See id.* Ex. G, Sprint's Objections and Responses to Comcast's Second Set of Requests for Production to Sprint; *id.* Ex. H, Sprint's Objections and Responses to Comcast's Second Set of Interrogatories (Nos. 17-20).) Comcast never responded to these objections in any meaningful way, and never identified with specificity additional devices that it believed to be covered by the definition of "Accused Sprint Products" prior to the close of discovery.

Sprint issued interrogatories seeking to understand Comcast's "Accused Sprint Products." Specifically, in response to Sprint's Interrogatory No. 1, which required Comcast to "identify each Sprint product or service that you allege incorporates or embodies the identified claims," Comcast responded with a vague description of functionalities drawn directly from the claim language in the '694 Patent, but failed to identify even one device.   (*See id.* Ex. I, Comcast's Objections and Responses to Sprint's First Set of Interrogatories (No. 1).)   Although Comcast "reserve[d] its right to supplement, revise, or render more specific its response to Interrogatory No. 1," it never did so.   (*See id.*)   In sum, Comcast failed to identify the New Devices during the course of written discovery under the Federal Rules of Civil Procedure.

### B.    Comcast's Default Standard Rule 4 Disclosures

Comcast also failed to disclose or identify the New Devices in its Default Standard disclosures.   Pursuant to Default Standard Rule 4(a), Comcast was required to "specifically identify the accused products and the asserted patent(s) they allegedly infringe" within thirty days of the Rule 16 Conference.   The Default Standard notes that these disclosures are "initial" and that "each party shall be permitted to supplement."    Default Standard Rule 4(a).   Comcast

5

filed its initial Rule 4(a) disclosures on August 20, 2012 (D.I. 47) (*see* Riopelle Decl. Ex. J), and amended them twice over the next few months (*see id.* Ex. K, October 3, 2012 Comcast 4(a) Disclosure (D.I. 60) and Ex. L, November 6, 2012 Comcast 4(a) Disclosure (D.I. 64)) choosing each time to accuse "Sprint's wireless telephony products and services that support both voice and data" and not individual handsets.

On November 2, 2012, Comcast served disclosures pursuant to Rule 4(c), which included an "Infringement Chart" for the '694 Patent.  (*See id.* Ex. M, November 2, 2013 Comcast 4(c) Disclosure, at Exhibit D.)  This chart did not, however, "relat[e] each accused product to the asserted claims each product allegedly infringes," as required by Default Standard Rule 4(c).  Rather, it tracked the two asserted claims of the '694 Patent to a conglomeration of different products and services allegedly offered by Sprint.  As for specific devices, the '694 infringement chart referred to the following, but did *not* do so on a claim-by-claim basis:

Comcast did, however, note that

Significantly, Comcast had information available to it long before submitting this chart that would have been sufficient to identify the New Devices.  (*See, e.g.*, *id.* (summarizing evidence of infringement relied on by Dr. Dwoskin).)  Indeed, all of the documentary evidence

---

[4] This device is not referred to in the Supplemental Dwoskin Report.
[5] This device is not referred to in the Supplemental Dwoskin Report.
[6] The two devices referred to as ▮▮▮▮ and ▮▮▮▮ respectively, are the same device.  Thus, Comcast's November 2, 2012 Rule 4(c) disclosures referred to only four devices.

cited as "Representative Evidence of Infringement" in the Supplemental Dwoskin Report was produced between March and June of 2013.  (*See* Appendix I.)

After nearly a year of discovery, on September 27, 2013, Comcast supplemented its infringement contentions to include two additional devices: ███████████████████ ███████████████  (*See* Riopelle Decl. Ex. N, September 27, 2013 Comcast 4(c) Disclosure, at 7.)  Here again, Comcast failed to provide a "claim chart relating each accused product to the asserted claims each product allegedly infringes," choosing instead to compare a vague combination of Sprint products and services to the asserted claims.  (*See id.* at Exhibit D.) As with its prior disclosures, Comcast reserved the right "to identify additional infringing instrumentalities."  (*Id.*)  To date, however, Comcast has supplemented neither its Rule 4(a) nor Rule 4(c) disclosures to include the New Devices.  And, as importantly, Comcast has never provided a "claim chart relating each accused product to the asserted claims each product allegedly infringes" for *any device*, much less each of the New Devices, as required under the Local Rules.

### C.   Comcast's First Technical Expert Report

In his September 20, 2013 Expert Report, Jeffrey S. Dwoskin did not reference, much less analyze, any of the five devices identified in Comcast's November 2, 2012 Rule 4(c) disclosures.  Instead, Dr. Dwoskin identified only the ████████████████████ ███████████████  (i.e., the two devices subsequently identified in Comcast's September 27, 2013 supplement to its infringement contentions) as infringing the '694 Patent.  (*See* Riopelle Decl. Ex. O, September 20, 2013 Expert Report of Jeffrey S. Dwoskin, at 19, n. 72, 40, n. 108.)  Dr. Dwoskin appears to have relied on publically available user guides for two previously unidentified devices, the █████████████████████████████  though it is unclear if

these devices were intended to be included as accused devices.  (*See id.* at Exhibit A.)[7]  As with Comcast's discovery responses and infringement contentions, Dr. Dwoskin reserved the right to supplement the list of accused devices.  (*See id.* at 19, n. 72, 40, n. 108.)  Prior to the close of discovery, Dr. Dwoskin did not supplement his list of accused devices.

### D.    Comcast's Post-Discovery Demands

As of September 27, 2013, Comcast had identified only eight devices as allegedly infringing the '694 Patent: ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████  Sprint produced financial figures for these devices on January 3, 2014. (*See* Riopelle Decl. Ex. P, SPRIDED_03_00002145-2154.)

The deadline for completion of all outstanding discovery was March 14, 2014.  (D.I. 198.)  On March 20, 2014—nearly a week after the close of discovery—Comcast requested via email that Sprint "expand its search for damages-related information" to include an additional 28 devices, *none of which had been disclosed or identified in any way by Comcast prior to the close of discovery*.[8]  In its response, Sprint noted that documents sufficient to identify these 28 devices as potentially infringing had been in Comcast's possession for nearly a year.  (*See id.* Ex. Q,

---

[7] Dr. Dwoskin also relied on a publically available user guide for the ████████████ which was previously identified in Comcast's November 2, 2012 Rule 4(c) disclosures. (*See* Riopelle Decl. Ex. O at Exhibit A.)

[8] Comcast also stated that Sprint had "agreed" to provide discovery regarding other devices that employ the accused functionalities.  This assertion, even if accurate, does not relieve Comcast of its obligations to specifically disclose and chart accused devices under Default Standard Rule 4, nor does it explain the fact that Comcast was ultimately able to identify the New Devices, albeit after the close of discovery, based on documents produced in March and June of 2013.  *See, e.g.*, *Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS, 2011 U.S. Dist. LEXIS 53846, at *15 (D. Del. May 19, 2011) (rejecting argument that failure to make a timely supplement was caused by opposing party's delay in discovery as "inadequate and unpersuasive" and holding that party seeking to supplement "ha[d] an ability and duty to develop its own defenses").

March 21, 2014 Email from Aaron E. Hankel to Micah G. Block.)  Sprint objected "to any belated expansion seeking to accuse additional third-party devices" and "to the extent Comcast also [sought] to substantively expand its infringement allegations beyond those articulated by Dr. Dwoskin."  (*See id.*)

On March 31, 2014, Comcast filed a letter motion to compel.  (D.I. 220.)  The Court ultimately permitted Comcast to seek limited damages-related discovery, but did not rule on the ultimate question of whether Comcast's post-discovery expansion of its infringement contentions is permissible.

### E.    Comcast's Supplemental Technical Expert & Damages Reports

On May 2, 2014, Comcast issued the Supplemental Expert Report of Jeffrey S. Dwoskin (*see generally* Riopelle Decl. Ex. A, Supplemental Dwoskin Report).  This document, filed nearly two months after the close of discovery, was the first to identify 36 additional accused devices that had not been identified as infringing before the close of discovery, i.e., the New Devices.

The Supplemental Dwoskin Report also introduces the concept that ████████████ ████████████████████████████████████████████████ (*Id.* at p. 8.)  This previously undisclosed theory regarding the possibility that ████████████████████ ████████████████████████████████████████ is relied on by Comcast's damages expert, Carla Mulhern, in her calculation of ████████████████ ████████████████████████████████ (*Id.* Ex. B, Mulhern Report, at p. 79-80.)  Taken together, the untimely disclosure of 36 additional devices and the ████████ ████████ form the lynchpin of Ms. Mulhern's damages calculation vis-à-vis the '694 Patent. Although her report was timely, Ms. Mulhern impermissibly bases her '694 Patent damages

calculation on the two untimely disclosures in the Supplemental Dwoskin Report.[9]

## V.   ARGUMENT

### A.   Standards for Exclusion

A district court is within its discretion to exclude evidence for failure to comply with the disclosure deadlines required by local patent rules or a case management order.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding no abuse of discretion in exclusion of evidence pertaining to theories of claim construction and infringement not disclosed as required by the local patent rules and the court's scheduling order); *Chimie v. PPG Indus., Inc.*, 303 F. Supp. 2d 502, 507 (D. Del. 2004) (excluding expert report served on the last day of discovery because Rule 26 "require[s] supplementation at 'appropriate intervals' of discovery responses so that opposing party has correct information about expert's positions"), *affirming the decision to exclude*, 402 F.3d 1371, 1381 (Fed. Cir. 2005).

Authority to exclude untimely expert opinion arises under either Rules 37 or 16(f). Under Rule 37(c)(1), a party that fails to comply with Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  To determine whether a party's failure to comply is either substantially justified or harmless within the meaning of Rule 37(c), courts consider such factors as: "(1) the importance of the information withheld; (2) the prejudice or

---

[9]

surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the 'Pennypack factors')." *See, e.g.*, *Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS, 2011 U.S. Dist. LEXIS 53846, at *8 (D. Del. May 19, 2011) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

Sanctions under Rule 37 include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *In re TMI Litig.*, 193 F.3d 613, 722-23 (3d Cir. 1999) (affirming the district court's exclusion of expert reports untimely filed without justification); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, Nos. 04-1426, 06-404, 08-371, 2012 U.S. Dist. LEXIS 40103, at *21-26 (D. Del. Mar. 26, 2012) (excluding supplemental report as a sanction for a party's failure to comply with the Court's scheduling order).

Rule 16(f) allows the Court to sanction a party that fails to obey the scheduling order, and this district in particular has sanctioned parties for relying on disclosures that were not timely disclosed under the governing scheduling order.  *See, e.g.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-LPS-MPT, 2013 U.S. Dist. LEXIS 70745, at *42-45 (D. Del. May 20, 2013) (excluding supplemental expert report because, *inter alia*, "[t]he scheduling order . . . did not provide for supplemental expert reports"); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) (finding that, although exclusion of expert testimony is a "harsh measure [that] should be avoided where possible," it can be appropriate to prevent the "flouting of discovery deadlines" so as to maintain "fidelity to the constraints of Scheduling Orders and deadlines[,

which are] critical to the Court's case management responsibilities"), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

### B.    The Supplemental Dwoskin Report Violates the Court's Scheduling Orders

The Supplemental Dwoskin Report should be excluded because it violates the Court's Scheduling Orders (D.I. 36, 198).  *See, e.g.*, *SanDisk Corp*, 415 F.3d at 1292.

The Scheduling Order states:

> Expert Reports.  For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before September 20, 2013.  The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before October 25, 2013.  Reply expert reports from the party with the initial burden of proof are due on or before November 8, 2013.  ***No other expert reports will be permitted without either the consent of all parties or leave of the Court***.

(D.I. 36 (emphasis added).)  The Supplemental Dwoskin Report was served on May 2, 2014, nearly seven months after the completion of the technical expert briefing schedule contemplated by the Scheduling Order.  Moreover, it was submitted without the consent of Sprint or the Court, in disregard of the admonition to the contrary in the Scheduling Order.  For this reason alone, the Supplemental Dwoskin Expert should be excluded from evidence.  In early 2014, the parties even coordinated on a modification to the Court's original Scheduling Order regarding the submission of expert reports on damages.  (D.I. 198.)  This stipulated amendment made no mention of the possibility of submitting supplemental technical expert reports.  To the contrary, it explicitly memorialized the parties' agreement that all "Outstanding Fact Discovery" would be completed by March 14, 2014.  Comcast missed this date by more than two months and has offered neither explanation nor justification for its delay.

Here, Comcast's efforts to broaden the scope of its infringement contentions by way of an untimely supplemental expert report violate the Scheduling Order and lack substantial

justification.  In addition, leaving aside the failure to abide by the Court's Scheduling Orders, it would prejudice Sprint if Comcast were permitted to proceed with the New Devices and the ██████████████████████████████ theory in the case. The information that formed the basis of Comcast's list of New Devices was produced in March and June 2013, nearly a year before Comcast first raised the possibility of accusing additional devices after the close of discovery. Thus, nothing precluded Comcast from disclosing the New Devices long before the close of discovery.  There is similarly no explanation for Comcast's failure to raise its theory ████████ ████████████████████████████ for the first time at this late stage of the litigation. For these reasons alone, the Supplemental Dwoskin Report should be excluded.  By extension, the portions of Ms. Mulhern's report that rely on Dr. Dwoskin's untimely submission should also be excluded.

### C.    The New Devices Were Not Properly Accused

Where a party fails to provide proper disclosures of accused devices under the discovery framework, including by failing to serve timely disclosures and to provide a claim-by-claim infringement claim chart, those devices are not properly accused and are not part of the case.  *See Round Rock Research v. Lenovo Group*, No. 11-1011-RGA, slip op. at 1 (D. Del. June 14, 2013) ("[T]he only accused products are the ones for which the Plaintiff has done infringement contentions and complete claim charts.")[10]; *see also Walker Digital, LLC v. Google, Inc., et al.*, No. 11-309-SLR, 2013 U.S. Dist. LEXIS 83860, at *6-9 (D. Del. June 14, 2013) (granting motion to exclude late identification of accused instrumentalities for which plaintiff had failed to provide complete claim charts).  Here, Comcast had ample time to identify with specificity the New Devices during discovery, but never did so.  For example, Comcast filed its initial Rule 4(a)

---

[10] *See* Riopelle Decl. Ex. R.

disclosures on August 20, 2012 (*see* Riopelle Decl. Ex. J), and amended them twice over the next few months (*see id.* Exs. K and L) choosing each time to accuse "Sprint's wireless telephony products and services that support both voice and data" and not individual handsets.  Nor did Comcast identify the New Devices in its objections and responses to Sprint's interrogatories, which invited Comcast to identify each Sprint device or service that allegedly infringes the asserted patents, or in its infringement contentions served on November 2, 2012 and September 27, 2013, respectively.  (*See id.* Exs. I, M, and N.)  In sum, despite having all of the information by at least June 2013 that it needed to identify the New Devices, Comcast failed to identify them until more than a month after the close of discovery.  This violates the Court's Scheduling Orders (D.I. 36, 198), Default Standard Rule 4(a), and applicable case law.  Accordingly, the New Devices are "not a part of this case."  *Cf. EON Corp. IP Holdings LLC*, No. 10-812 (RGA), 2013 U.S. Dist. LEXIS 155959, at *8 (D. Del. Aug. 28, 2013) ("'Accused Products' must be limited to those which have been both timely accused and the subject of proper infringement contentions."), *report and recommendation adopted at* 2013 U.S. Dist. LEXIS 155471 (D. Del. Oct. 30, 2013).

### D.      Comcast's Non-Infringing Alternative Theory is Untimely

As discussed above, the Supplemental Dwoskin Report introduced, for the first time, the concept that ██████████████████████████████████████████████████████ ██████████████████████ (Riopelle Decl. Ex. A at p. 8.)  Dr. Dwoskin's first Expert Report makes no mention of ████████████████████████████████████████████████████ ██████████ (*See generally id.* Ex. O.)  This previously undisclosed opinion regarding the possibility that ████████████████████████████████████████████████████ ███████████████████ is relied upon by Comcast's damages expert, Carla Mulhern, in her calculation

of ███████████████████████████████████████████████

███████ (*Id.* Ex. B at p. 79-80).  Indeed, Dr. Dwoskin ███████████████████

███████████████████████████████████████████████████████

███████████████ (*Id.* Ex. A at 1.)  And, he does so without any explanation as to why these

opinions were not disclosed in prior reports or otherwise in a timely fashion.  Simply put, this is

a theory that Comcast developed late in the litigation, in part by relying on documents produced

many months prior to the close of discovery.

Where, as here, an untimely expert report introduces new opinions without "substantial

justification for the delay," that report must be excluded.  *See, e.g.*, *Praxair, Inc.*, 231 F.R.D. at

464 (excluding as untimely expert report disclosing "new testing, conclusions and theories of

invalidity not contained in his original report"); *Chimie*, 303 F. Supp. 2d at 507 (excluding as

untimely expert report disclosing new "testing" of accused products); *Masimo*, 2013 U.S. Dist.

LEXIS, at *42-45 (excluding as untimely expert report disclosing "new testing results").

Comcast's theory ███████████████ was disclosed for the first time after the close of

discovery in a last ditch attempt to bolster its damages analysis.  Comcast offers no explanation

for the delay, let alone "substantial justification."  Accordingly, both the expert report of Dr.

Dwoskin and those portions of the Mulhern Report that address the '694 Patent should be

excluded from evidence pursuant to well-settled precedent preventing untimely disclosures

regarding theories of liability.

### E.      Sprint's Motion to Exclude Should Be Granted

#### 1.      The *Pennypack* Factors Are Satisfied

The first *Pennypack* factor is the importance of the information withheld.  There can be

no dispute that identification of alleged infringing devices, the corresponding theory of

infringement, and allegations regarding non-infringing alternatives are of the highest importance

to a defendant in a patent suit.   Such information must be disclosed during discovery and pursuant to the Court's schedule.   Moreover, excluding Dr. Dwoskin's untimely Supplemental Report will not leave Comcast bereft of expert opinion.   Rather, it will leave Comcast with the ability to argue infringement as to the devices it disclosed in a timely fashion.   *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc.*, 2012 U.S. Dist. LEXIS 40103, at *18 (noting that "extreme" sanction of excluding supplemental report is nonetheless warranted where a party "failed to raise all of its infringement contentions at the appropriate time").   As to Ms. Mulhern, only those portions of her report that address the '694 Patent need be excluded for the reasons discussed herein.   Thus, the first *Pennypack* weighs in favor of exclusion.

The second *Pennypack* factor is the surprise or prejudice to the party against whom the information is offered.   There can be no doubt that Sprint was both surprised and prejudiced by Comcast's late identification of the New Devices.   Springing completely new accused devices after the close of discovery deprived Sprint the opportunity to examine the allegations during discovery, identify witnesses specific to the devices, and respond to the allegations in Sprint's expert report.   This self-evident prejudice is further exacerbated by the fact that the New Devices are manufactured by third parties.   Even now—given Comcast's failure to supplement its discovery responses and infringement contentions—Sprint has no detailed infringement analysis to which it might respond at trial, since there are no infringement charts or other Default Standard Rule 4 disclosures on these New Devices.   Similarly, there can be doubt that Sprint has been surprised and prejudiced by Comcast's new theory ███████████   There is no discussion of ████████████████████████████████████████ in Dr. Dwoskin's opening report.   Sprint was therefore unable to explore and test the theory by, among other things, seeking discovery from relevant third parties, during the course of discovery or

responding to the theory in its expert report. *See, e.g.*, *Trilogy Commc'ns Inc. v. Times Fiber Commc'ns Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense."). Thus, the second *Pennypack* factor weighs in favor of exclusion.

The third *Pennypack* factor is the likelihood of disruption of the trial. Adding 36 new accused devices will greatly prolong the trial, as Comcast must prove infringement for each separate device. First, this case is headed toward trial this fall. Discovery is closed. The case should be getting narrower and more focused, not broadened—indeed, that is the very reason why the Court's Default Standard requires early disclosure of alleged infringing instrumentalities and infringement charts in the first place. And Sprint does not want delay, which would impose substantially more cost on it and unfairly allow Comcast to further complicate the case now that it has realized it cannot prevail on the theory that motivated this suit (i.e., Sprint's network infringed, rather than particular handsets). Second, addressing the New Devices at trial may require different evidence and witnesses than those already in the case. Many of the same issues arise with respect to Comcast's untimely introduction of ██████████████████████████ ████████████████████ Simply put, this theory has never been raised in this case and Sprint has not had any opportunity whatsoever to test it during discovery. *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc.*, 2012 U.S. Dist. LEXIS 40103, at *22 (noting that case "will suffer further delay and prolonged disruption if the Court allows additional [technical] expert reports and discovery at this time."). Accordingly, the third *Pennypack* factor weighs in favor of exclusion.

The fourth *Pennypack* factor is whether the prejudice can be cured. At least three forms of prejudice are evident here: (1) development of the factual record to rebut the new allegations

and legal theories and to strengthen Sprint's affirmative defenses, (2) supplementation of expert reports on non-infringement in view of the New Devices, and (3) supplementation of expert reports to address ███████████████ Moreover, given that Comcast has not provided infringement charts on the New Devices, Sprint does not even have sufficient information to which to respond in an expert report. *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc.*, 2012 U.S. Dist. LEXIS 40103, at *22 (noting that "allowing Defendants to file rebuttal expert reports and, if warranted, new motions for summary judgment" is insufficient to wholly overcome the prejudice caused by untimely supplementation). Thus, the fourth *Pennypack* factor also favors exclusion.

The fifth *Pennypack* factor is the explanation by Comcast as to why it decided to identify 36 new devices and a new legal theory after the close of discovery. There is no justification for these eleventh hour disclosures. As noted above, each and every one of the New Devices could have been identified by Comcast based on documents produced by Sprint in March and June 2013. Indeed, it appears that Comcast used these very documents to develop its list of New Devices following the April 2, 2014 hearing on Comcast's letter motion to compel. Similarly, each piece of documentary "Evidence of Infringement" cited by Dr. Dwoskin in his untimely chart of accused devices was produced in March and June 2013. (*See* Appendix I.) ████████

████████████████████████████████████████████████████

██████████████████████ Dr. Dwoskin merely points out that ███████████████████████

██████████████████████ The only plausible bases for these late disclosures is that Comcast simply failed to conduct its own due diligence during the course of discovery or perhaps that it decided during the damages expert report phase that it needed to buttress its damages theory. *See, e.g.*, *Abbott Labs.*, 2011 U.S. Dist. LEXIS 53846, at *15 (holding that fifth

*Pennypack* factor favors exclusion because party seeking to supplement "ha[d] an ability and duty to develop its own defenses"). The fifth *Pennypack* factor is therefore satisfied.

The final *Pennypack* factor is the presence of bad faith or willfulness in not disclosing the information earlier. As to the New Devices, two points are important here. The first is that Comcast has not even attempted to carry its burden of proof for these late-disclosed devices—there are no infringement charts explaining how the New Devices infringe the asserted claims, as is required under the Default Standard, nor was there any reference to, much less a detailed substantive analysis of, the New Devices in Comcast's timely expert reports. Also, Comcast did not seek Sprint's consent or leave from this Court to submit its supplemental report. Rather, despite having ample time to present and develop its theories for the New Devices, Comcast's expert conclusorily asserted there is infringement as to two devices and leaves Sprint to connect the dots as to the newly-identified 36 devices. These late-disclosed instrumentalities are not good faith efforts to articulate infringement, but rather a last ditch effort to broaden the scope of damages to include devices identified only after the close of discovery. If permitted, this supplementation will serve only to complicate the case further and increase Sprint's defense costs. Similarly, Comcast provides no explanation as to why it did not disclose its theories regarding ████ before the close of discovery. With the exception of some citations to ██ ███████████████████████████████████████ materials relied on by Dr. Dwoskin and Ms. Mulhern as to this theory have been available for many months—and in some cases, many years.[11] Thus, while Comcast may not have willfully overlooked this theory during the course of discovery,

---

[11] *See, e.g.*, Riopelle Decl. Ex. A, Supplemental Dwoskin Report, at p. 7, n. 17, 18 ████ █████████████████████████████████████████████ n. 19 (citing SPRIDED_05_04091491 produced on June 17, 2013 (attached as Riopelle Decl. Ex. S)), n. 23 (citing SPRIDED_05_01023558, produced on March 29, 2013 (attached as Riopelle Decl. Ex. T)); Riopelle Decl. Ex. B, Mulhern Report, at p. 79, n. 367 (citing Supplemental Dwoskin Report and ███████████████████████████

there is no plausible explanation for raising it at this late stage of the litigation.   The final *Pennypack* factor therefore favors exclusion as well.

### 2.    Excluding the Expert Reports Is the Appropriate Remedy

Given the late stage of this case, and that all of the *Pennypack* factors are satisfied, it is appropriate for the Court to strike the Supplemental Dwoskin Report and those portions of the Mulhern Report that address the '694 Patent under Rule 37.   It is also an appropriate sanction under Rule 16(f), since the Scheduling Order and Default Standard gave Comcast numerous opportunities to identify accused devices and its infringement theories.   Further, Rule 26(e), "imposes a duty to supplement incorrect or incomplete information, it 'does not . . . bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline." *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001).   The New Devices should have been identified in Comcast's Default Standard Rule 4 disclosures prior to the close of discovery.   This is particularly true because Comcast's eventual identification of the New Devices was based on information available to Comcast nearly a year before the close of discovery. Comcast's theory regarding ███ should have been disclosed in Dr. Dwoskin's opening report or in some other fashion prior to the close of discovery.   Since Comcast failed to comply with the Scheduling Order and the Default Standard, excluding the Dwoskin Report and the portions of the Mulhern Report that address the '694 Patent—both of which are hopelessly intertwined with Comcast's untimely theories of infringement—under Rules 16(f) or 37 is the appropriate remedy.

## VI.    CONCLUSION

Sprint respectfully requests that its Motion to Exclude the Supplemental Expert Report of Jeffrey S. Dwoskin and Certain Portions of the Expert Report of Carla S. Mulhern be granted.

Dated:  June 4, 2014

_____ */s/ Richard K. Herrmann* _____

B. Trent Webb (*pro hac vice*)

John D. Garretson (*pro hac vice*)

Aaron E. Hankel (*pro hac vice*) Ryan J. Schletzbaum (*pro hac vice*)

Ryan D. Dykal (*pro hac vice*)

Lynn C. Herndon (*pro hac vice*)

SHOOK, HARDY & BACON LLP 2555 Grand Boulevard

Kansas City, Missouri 64108-2613

(816) 474-6550

bwebb@shb.com, jgarretson@shb.com

ahankel@shb.com, rschletzbaum@shb.com

rdykal@shb.com, lherndon@shb.com


Robert H. Reckers (*pro hac vice*)

Matthew C. Broaddus (*pro hac vice*)

Jared M. Tong (*pro hac vice*)

SHOOK, HARDY & BACON LLP

JPMorgan Chase Tower

600 Travis Street, Suite 3400

Houston, Texas 77002-2992

(713) 227-8008

rreckers@shb.com

mbroaddus@shb.com

jtong@shb.com

Richard K. Herrmann (#405)

Mary B. Matterer (#2696)

MORRIS JAMES LLP

500 Delaware Avenue, Suite 1500

Wilmington, DE 19801

(302) 888-6800

rherrmann@morrisjames.com

mmatterer@morrisjames.com


David E. Finkelson (*pro hac vice*)

Brian C. Riopelle (*pro hac vice*)

MCGUIREWOODS LLP

901 East Cary Street

Richmond, Virginia, 23219-4030

(804) 775-1000

dfinkelson@mcguirewoods.com

briopelle@mcguirewoods.com


Rachelle H. Thompson (*pro hac vice*)

MCGUIREWOODS LLP

434 Fayetteville Street, Suite 2600

Raleigh, North Carolina 27601-7507

(919) 755-6600

rthompson@mcguirewoods.com


***Attorneys for Sprint***