IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Comcast IP Holdings I, LLC,**<br><br>                          Plaintiff,<br><br>v.<br><br>**Sprint Communications Company L.P., Sprint Spectrum L.P.,** and **Nextel Operations, Inc.,**<br><br>                          Defendants. | Civil Action No. 12-205-RGA |

MEMORANDUM OPINION

Ryan P. Newell, Esq., Connolly Gallagher LLP, Wilmington, DE; Antony I. Fenwick, Esq. (argued), Davis Polk & Wardwell, LLP, Menlo Park, CA; David Lisson, Esq., Davis Polk & Wardwell, LLP, Menlo Park, CA, attorneys for Plaintiff.

Richard K. Herrmann, Esq., Morris James LLP, Wilmington, DE; Brian C. Riopelle, Esq. (argued), McGuireWoods LLP, Richmond, VA; David E. Finkelson, Esq., McGuireWoods LLP, Richmond, VA; Robert H. Reckers, Esq., Shook, Hardy & Bacon LLP, Houston, TX, attorneys for Defendants.

July 15, 2014

*/s/ Richard G. Andrews*
ANDREWS, U.S. District Judge:

Presently before the Court is Sprint's Motion for Summary Judgment that Comcast's Claims Against Sprint's Use of Alcatel-Lucent Products are Barred by License and Estoppel (D.I. 160) and related briefing. (D.I. 161, 188, 209). On May 15, 2014, the Court heard oral argument on this motion. (D.I. 239).

## I. BACKGROUND

This is a patent infringement action. Plaintiff Comcast IP Holdings currently alleges that Defendant Sprint infringes U.S. Patent No. 6,873,694 ("the '694 patent"), U.S. Patent No. 7,012,916 ("the '916 patent"), U.S. Patent No. 8,170,008 ("the '008 patent"), and U.S. Patent No. 8,204,046 ("the '046 patent"). Sprint contends that it has a license to the '008 patent, either express or implied, via a licensing agreement between Hewlett-Packard ("HP"), the original assignee of the patent, and Lucent, the predecessor to Alcatel-Lucent and the manufacturer of some of the accused equipment.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The

1

burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED. R. CIV. P. 56(c)(1).[1]

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

---

[1] There is an extensive record in this case. To the extent a party does not properly oppose factual assertions, the Court considers the factual assertion to be undisputed and a basis on which to grant summary judgment. FED. R. CIV. P. 56(e)(2) & (3).

## III. DISCUSSION

Comcast is currently asserting the '008 patent against Sprint. Comcast acquired the '008 from HP in 2008, subject to any outstanding licenses. One of those licenses was a 2001 cross-licensing agreement between HP and Lucent. Lucent, now Alcatel-Lucent, manufactures many of the devices which Sprint uses, and which Comcast accuses of performing the patented methods. Because Sprint contends that the 2001 license applies to these products, it argues that Comcast cannot assert the '008 patent against Sprint's use of licensed products. (D.I. 161 at 4).

Sprint has two theories as to why Comcast's infringement allegations are barred. The first is that the license expressly covers the asserted patents and accused products. (D.I. 161 at 5). The second is that there is an implied license because HP, as Comcast's predecessor in interest, already received consideration for the licensing rights, and Comcast may not derogate these rights. (D.I. 161 at 5). In order to prove that the license applies, Sprint must prove: that the license covered the '008 patent, that the license was extended to Lucent's customers, that the license now rests with Alcatel-Lucent, and that the license extends to Sprint as a customer of Alcatel-Lucent. Because I decide this motion on the first issue, I need not and do not reach the other three.

In 2001, HP and Lucent entered into a cross-licensing agreement granting "personal, nonexclusive and non-transferable licenses under [HP's] PATENTS to LUCENT-GRL… to make, have made, use, lease, sell, offer to sell and import LICENSED PRODUCTS." (D.I. 166-1 at 38). The Appendix to the agreement defines "PATENTS" as "all patents (including utility models but excluding design patents and design registrations) issued or having enforceable rights in any country of the world from an application filed on or before January 31, 2001." (D.I. 166-1

3

at 49). The '008 patent is a "[c]ontinuation of application No. 11/066,880, filed on Feb. 25, 2005, now Pat. No. 7,804,816, which is a division of application No. 10/052,285, filed on Jan. 18, 2002, now Pat. No. 7,012,916, which is a division of application No. 09/077,795, filed as application No. PCT/GB96/03055 on Dec. 11, 1996, now Pat. No. 6,466,570." (D.I. 59-5 at 2).

In the briefing, Sprint argued that the '008 patent "issued from" application No. PCT/GB96/03055, which was filed on Dec. 11, 1996, and therefore was subject to the license. (D.I. 161 at 15). As pointed out by Comcast both in the briefing and at oral argument, had the parties intended to cover continuation or divisional applications, they would have stated "issued from or claiming priority to." At oral argument, Comcast cited numerous cases supporting this understanding of the language "issued from." (D.I. 239 at 75:1-8). It is unambiguous that the '008 patent did not "issue from" an application filed before January 31, 2001. The '008 patent issued from application No. 12/389,843, which was filed on Feb. 20, 2009. (D.I. 59-5 at 2). Apparently understanding that the "issued from" argument was not a winner, at oral argument Sprint based the assertion that the '008 patent was covered by the license on the "enforceable rights" language.

The definition of patent in the agreement covers "patents... issued or having enforceable rights in any country of the world from an application filed on or before January 31, 2001." (D.I. 166-1 at 49). Under a straightforward reading of this language, the phrase "in any country of the world" modifies both "issued" and "having enforceable rights." Therefore, the language is understood as covering two separate things: "patents issued in any country of the world from an application filed on or before January 31, 2001," and "patents having enforceable rights in any country of the world from an application filed on or before January 31, 2001." It is clear what is

4

or is not a patent issued in any country of the world. However, it is not immediately clear what is a patent, not issued, but having enforceable rights in a country. I asked that the parties submit supplemental letter briefing on this narrow issue. (D.I. 243).

Comcast's response was the more persuasive of the two. Comcast posits that this language refers to patents which are issued not in any country, but by a transnational body such as the European Patent Office ("EPO"). (D.I. 247 at 2-3). Under the European Patent Convention ("EPC"), an applicant may file a patent application with the EPO, which will examine the application and determine whether it is patentable. (D.I. 247-1 at arts. 75, 90). If the application is patentable, the EPO will issue a European patent, which can be brought into force in some or all of the EPC member countries. (D.I. 247-1 at arts. 2, 64; *see also* D.I. 247-2). Such a European patent may have enforceable rights in a particular country even though it was not issued in a particular country. (*See* D.I. 247-3). Based on the above interpretation of "enforceable rights," I find that the '008 patent is not a patent having "enforceable rights in any country of the world from an application filed on or before January 31, 2001."

Because the 2001 license did not expressly cover the '008 patent, Sprint's express license theory fails. However, Sprint cites to *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011), for the proposition that, absent some clearly-articulated provision in the contract, the law imposes an implied license to continuation patents that issue from previously licensed patents. Sprint argues that even if the '008 patent was not expressly licensed, it is subject to an implied license. (D.I. 161 at 15).

The caselaw makes clear that an implied license arises because a licensor is estopped from "'taking back in any extent that for which [it] has already received consideration.'"

5

*TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009) (citation omitted). The most common circumstance in which this arises is when two parties settle as to one patent, generally by entering into a licensing agreement, and then one of the parties asserts the continuation patent. *See, e.g.*, *TransCore*, 463 F.3d at 1273; *Gen. Protecht*, 651 F.3d at 1357-58. In that situation, a patentee may be estopped from asserting the continuation patent, because to do so would prevent the licensee from practicing the parent patent. *TransCore*, 463 F.3d at 1279 ("[I]n order for [the licensee] to obtain the benefit of its bargain with TransCore, it must be permitted to practice the [continuation] patent to the same extent it may practice the [parent] patents.").

This doctrine, however, is a narrow one:

> Our subsequent cases confirm the limited scope of *TransCore*. In *General Protecht Group, Inc. v. Leviton Manufacturing Co., Inc.*, we found an implied license where the asserted patents had "[t]he same inventive subject matter [as that] disclosed in the licensed patents" and "[t]he same products were accused." 651 F.3d 1355, 1361 (Fed. Cir. 2011). As in *TransCore*, the patents at issue in *General Protecht* were *continuations* of the licensed patents. *See id.* at 1360 (quoting *TransCore*, 563 F.3d at 1279–80). We observed that "the newly asserted continuations are based on the same disclosure as the previously licensed patents and that, by definition, the continuations can claim no new inventions not already supported in the earlier issued patents." *Id.* at 1361. After explaining that *TransCore* "prohibits a patent licensor from derogating from rights granted under the license," we held that "where ... *continuations issue from parent patents that previously have been licensed as to certain products,* it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well." *Id.* (emphasis added). In *Intel Corp. v. Negotiated Data Solutions, Inc.*, we explained that *TransCore* and *General Protecht* "analyzed a licensee's rights when the patent holder received a *continuation patent*" and "recognized that allowing the patent holder to sue on subsequent patents, when those later patents contain *the same inventive subject matter that was licensed,* risks derogating rights for which the licensee paid consideration." 703 F.3d 1360, 1366 (Fed. Cir. 2012) (emphases added). Taken together, these cases stand for the rule that a license or a covenant not to sue enumerating specific patents may legally estop the patentee from asserting

6

> *continuations* of the licensed patents in the absence of mutual intent to the
> contrary. *See Gen. Protecht,* 651 F.3d at 1361; *TransCore,* 563 F.3d at 1279.

*Endo Pharm. Inc. v. Actavis, Inc.,* 746 F.3d 1371, 1378 (Fed. Cir. 2014). Therefore, the relevant question is whether the inventive scope of the parent patent is such that in practicing that patent one would necessarily practice the '008 patent. For instance, if Alcatel-Lucent were to make a product which practiced the claims of the parent patent, would such a product infringe the '008 patent? Such a finding would weigh in favor of an implied license. In that case, Comcast, through HP, would have already received compensation, and any extra compensation would not be justified. However, at this point the record does not support such a finding.[1]

Sprint cites to *Motorola, Inc. v. Analog Devices, Inc.,* 2004 WL 5633740, at *4 (E.D. Tex. Aug. 10, 2004), where the court found that it would be unreasonable to interpret a cross-licensing agreement to disclaim continuation patents, because "the reneging party would get a new 'filing date,' thus voiding the license, but also retain the benefits of the earlier priority date." (D.I. 209 at 12). The Court emphasized the fact that a license granted on January 1 could be disavowed by the filing of a continuation application on January 2. *Id.* Here, over 8 years passed between the grant of the license and the filing of the continuation application. There is no capricious disavowal of the license, at least based on the record at hand. In any event, the license in *Motorola* did not contain any language evidencing intent to the contrary, and therefore is consistent with the default rule of an implied license. *Id.* at *3.

---

[1] Given that the '008 patent traces its priority through two divisional applications, it seems unlikely that the subject matter is overlapping. *See* 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions.").

Sprint contends that, just like the license in *Motorola*, the license agreement at issue did not contain any "clear indication" of intent not to grant an implied license. (D.I. 209 at 12). Yet Sprint does not address Section 4.01 of the license, which states:

> Other than the provisions of Section 1.04, none of the parties nor any of their RELATED COMPANIES makes any representations, extends any warranties of any kind, assumes any responsibility or obligation whatever, or confers any right by implication, estoppel or otherwise, other than the licenses, rights and warranties herein expressly granted.

(D.I. 166-1 at 42). This section of the license agreement clearly disclaims any implied rights or rights via estoppel. Implied licenses arise under legal estoppel. *TransCore*, 563 F.3d at 1279. I therefore find that the agreement contains a "clear indication" not to extend the license to continuation patents via an implied license. I find that the license does not cover continuation patents, and therefore does not estop Comcast from asserting the '008 patent against Sprint.

Because Sprint has not proven that the license covers the asserted patents, I deny its motion for summary judgment. While Comcast has not filed a competing motion for summary judgment on this issue, at oral argument I asked for a letter explaining whether it would be appropriate for me to grant summary judgment for Comcast without such a motion. (D.I. 239 at 87). Comcast filed such a letter (D.I. 233), and Sprint filed an opposition letter. (D.I. 240). FED. R. CIV. P. 56(f)(1) allows the Court to grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004), allows for an exception to the notice requirement "subject to the meeting of three conditions: (1) the point at issue is purely legal; (2) the record was fully developed, and (3) the failure to give notice does not prejudice the party." Comcast argues that these conditions are met. Sprint contends that the issue is whether the Court should exercise its

authority to grant summary judgment *sua sponte*, not whether the exception to the notice requirement is met.

I see these issues as overlapping. I agree that this is a purely legal issue, and that Sprint would not be prejudiced. However, I believe that the record is not sufficiently developed in order to grant summary judgment in Comcast's favor. For instance, it is not clear whether the accused products incorporate technology covered by a patent subject to the license agreement. In such a case, equity might weigh in favor of estoppel, even in the face of Section 4.01 of the license. The Federal Rules of Civil Procedure allow me to grant summary judgment *sua sponte*, but they do not require me to do so. I therefore decline to grant summary judgment in Comcast's favor.

## IV. CONCLUSION

For the reasons above, Sprint's Motion for Summary Judgment that Comcast's Claims Against Sprint's Use of Alcatel-Lucent Products are Barred by License and Estoppel (D.I. 160) is denied. An appropriate order will be entered.