IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Comcast IP Holdings I, LLC,**<br><br>       Plaintiff,<br><br>  v.<br><br>**Sprint Communications Company L.P.,** **Sprint Spectrum L.P.,** and **Nextel Operations, Inc.,**<br><br>       Defendants. | Civil Action No. 12-205-RGA |

MEMORANDUM OPINION

Ryan P. Newell, Esq., Connolly Gallagher LLP, Wilmington, DE; Antony I. Fenwick, Esq. (argued), Davis Polk & Wardwell, LLP, Menlo Park, CA; David Lisson, Esq., Davis Polk & Wardwell, LLP, Menlo Park, CA, attorneys for Plaintiff.

Richard K. Herrmann, Esq., Morris James LLP, Wilmington, DE; Brian C. Riopelle, Esq. (argued), McGuireWoods LLP, Richmond, VA; David E. Finkelson, Esq., McGuireWoods LLP, Richmond, VA; Robert H. Reckers, Esq., Shook, Hardy & Bacon LLP, Houston, TX, attorneys for Defendants.

July 16, 2014

ANDREWS, U.S. District Judge:

Presently before the Court is Sprint's Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patent No. 6,873,694 are Invalid Under 35 U.S.C. § 101 (D.I. 151) and related briefing. (D.I. 152, 190, 208). On May 15, 2014, the Court heard oral argument on this motion. (D.I. 239).

## I. BACKGROUND

This is a patent infringement action. Plaintiff Comcast IP Holdings ("Comcast") currently alleges that Defendant Sprint infringes U.S. Patent No. 6,873,694 ("the '694 patent"), U.S. Patent No. 7,012,916 ("the '916 patent"), U.S. Patent No. 8,170,008 ("the '008 patent"), and U.S. Patent No. 8,204,046 ("the '046 patent"). Sprint contends that the asserted claims of the '694 patent are invalid because they are not patentable subject matter under 35 U.S.C. § 101.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

1

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED. R. CIV. P. 56(c)(1).[1]

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

Section 101 provides that, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof,

---

[1] There is an extensive record in this case. To the extent a party does not properly oppose factual assertions, the Court considers the factual assertion to be undisputed and a basis on which to grant summary judgment. FED. R. CIV. P. 56(e)(2) & (3).

may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, the Supreme Court "has recognized . . . three narrow categories of subject matter outside the eligibility bounds of § 101—laws of nature, physical phenomena, and abstract ideas." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1341 (Fed. Cir. 2013). The purpose of these carve outs are to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1293 (2012). However, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," but "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (quotation marks and italics omitted). The "[Supreme Court] has. . . made clear [that] to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (italics omitted).

In determining whether an abstract idea is patent eligible, the Supreme Court has determined that the patent must contain an "inventive concept." *Id.* at 1299. This "inventive concept" must do more than add a "well-understood, routine, conventional activity, previously engaged in by those in the field." *Id.* Furthermore, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) (internal quotation marks omitted).

The Federal Circuit has identified a two-step approach to determining whether something is patent eligible under § 101. *Accenture Global Servs, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013). "First, the court must identify whether the claimed invention

3

fits within one of the four statutory classes set out in § 101. Second, one must assess whether any of the judicially recognized exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas." *Id.* (internal citations and quotation marks omitted).

If the court determines that the claim embodies an abstract idea, the Federal Circuit has instructed that:

> [T]he court must determine whether the claim poses any risk of preempting an abstract idea. To do so the court must first identify and define whatever fundamental concept appears wrapped up in the claim. Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether additional substantive limitations narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.

*Id.* at 11 (internal citations and quotation marks omitted).

### III. DISCUSSION

Claim 21 is currently the only asserted claim of the '694 patent. (D.I. 228). It claims:

A telephony network optimization method, comprising:

receiving a request from an application to provide to the application service on a telephony network; and

determining whether a telephony parameter associated with the request requires acceptance of a user prompt to provide to the application access to the telephony network.

(Claim 21 of the '694 patent). The only disputed term in this claim is "telephony parameter." The Court construed the term according to its plain and ordinary meaning. (D.I. 123 at 16). The patent describes the invention as:

> A telephony network optimization system and method comprises receiving a request from an application to provide to the application service on a telephony network. The method also comprises automatically allocating to the application a channel on the telephony network to provide balanced network service in response to telephony parameters.

4

(Abstract of the '694 patent). The specification describes that:

> The availability of at least one of these parameters allows the present invention to optimize the usage of the telephony network by controlling multiple applications. For example, in a particular embodiment, a priority parameter determines whether a request is immediate, in which case the request is immediately allocated a channel and a connection established if needed; or deferrable, in which case the request is processed with a next immediate request. Other examples of telephony parameters include a dial-up prompting parameter, which allows a requesting application, or requester, to give a user of an appliance control over an Internet connection.

(Col 2 ll. 48-59 of the '694 patent). The Defendant moves to dismiss on grounds that the patent claims an abstract idea and thus that the patent is directed to ineligible subject matter under 35 U.S.C. § 101.

### 1. *Fundamental Concept*

Claim 21 is a method claim, and therefore falls within the statutory class of processes. *See* 35 U.S.C. § 100(b) (defining a process as a "process, art or method"). Defendants argue that Claim 21 is "drawn to the abstract, and fundamental, idea of a conditional decision." (D.I. 152 at 16). In support of this, Defendants point out that claim 21 only has two limitations: "receiving a request," and "determining" a response to that request. (D.I. 152 at 14). Once the determination is made, no further action is required. (D.I. 152 at 15). Furthermore, Defendants argue that the claim does not specify who or what is receiving the request or making the determination. (D.I. 152 at 14).

Conversely, Plaintiff argues that "the claims cover methods performed by a device in a telephony network, not a human," and that "[t]he claims do not simply recite making a conditional decision, but are narrowly directed to overcoming a specific problem of telephony networks by using telephony parameters to optimize bandwidth allocation on such networks." (D.I. 190 at p. 8). The Plaintiff maintains that it would be "nonsensical if it were interpreted to

5

mean that a human could perform the steps." *Id.* While the Court recognizes that the claim is drawn to a telephony network optimization method, and as such would likely be performed by a telephony network, the question for the Court at this juncture is not to determine whether there are sufficient limitations, but instead to determine whether and what is "the abstract idea at the heart" of the claim. *Accenture*, 728 F.3d at 1344.

Here, the Court agrees with Defendants that the abstract idea at the heart of the claim is the very concept of a decision.[1] The Court finds that claim 21 of the '694 patent generally seeks to:

(1) Receive a request;

(2) Determine whether that request requires a user prompt.

These two steps describe the simple concept of determining if a decision is required. Other than determining that a decision should be made, the claim does not require any further action. Thus, the claim itself is simply an embodiment of the abstract idea.

A decision is a basic mental process upon which everyone relies. A decision may be performed, and generally is performed, entirely in the human mind. Such processes are "unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (emphasis in original).

---

[1] While Defendant phrases it as a "conditional decision," the term "conditional" is redundant. Because the phrase "conditional action" is commonly used in § 101 analyses, I will simply use the term "decision."

6

Furthermore, a decision is more abstract than other ideas that the Federal Circuit and the Supreme Court have previously held to be unpatentable. For example the Supreme Court in *Bilski* found that hedging was an abstract idea, *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010), the Federal Circuit in *Dealertrack* found that processing information through a clearinghouse was an abstract idea, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012), and, most recently, the Supreme Court found that the concept of intermediated settlement was an abstract idea. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, at ___, 2014 WL 2765283, *6 (June 19, 2014). A decision is a more fundamental concept than hedging, processing information through a clearinghouse, or intermediated settlement, as it is a required step of each of these processes. A decision is a basic tool of scientific and technological work, and is therefore a patent ineligible abstract idea.

*2. Preemption Analysis*

Once an abstract idea is identified the Court must perform a preemption analysis and determine whether the remainder of the claim includes limitations that "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Accenture*, 728 F.3d at 1341. "[T]he relevant inquiry is whether a claim, as a whole, includes meaningful limitations restricting it to an application, rather than merely an abstract idea." *Ultramercial*, 722 F.3d at 1344 (citing *Mayo*, 132 S. Ct. at 1297) (internal quotation marks and italics omitted). Here, after analyzing the additional limitations imposed by claim 21 of the '694 patent, the idea of a decision has not been sufficiently limited by the claim to prevent the claim from "cover[ing] the full abstract idea itself." *Accenture*, 728 F.3d at 1341.

7

The Patentee attempts to limit claim 21 of the patent by confining it to the field of telephony. Specifically, the claim concerns a "telephony network optimization method," a request from an "application" for "service," and a "telephony parameter associated with the request." The Plaintiff argues that because the claim is directed to the optimization of a telephony network, it "must be performed by a device in such a network." (D.I. 190 at p. 13). The Plaintiff contends that because there are substantive and meaningful limitations which restrict the claim to a particularized application, there is no risk of preempting the underlying abstract idea. (D.I. 190 at p. 13).

Conversely, Defendants convincingly argue that the claim does not specify whom or what receives the request or makes the determination. (D.I. 208 at p. 1). Defendants point out that even if the claim were limited to optimizing a telephony network via a computer, it would still be invalid because "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." (D.I. 208 at p. 2) (quoting *Bilski v. Kappos*, 130 S. Ct. at 3230). The Court agrees.

The Plaintiff argues that it would not make sense for a user to perform the process because the "very determination being made in [the] claim is whether human input will be required." (D.I. 190 at p. 14). This assumes that the user who makes the determination and the user to whom the prompt is directed are the same person. Yet there is no reason for this assumption. The person who makes the decision to optimize the telephony network need not be the user of the telephony network. However, even assuming that the claimed method must take place on a computerized telephony network, and a computer is the one that makes the decision, the claim is still not patentable.

8

Claim 21 merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks. For instance, rather than an "application" requesting "service," we can think of a "person" requesting a "telephone call." The "person" makes a request through a telephone operator. The operator then looks to a "telephony parameter" associated with that request. Let us assume that the parameter is whether the call is "collect" or whether it is a standard call. If the call is a standard call, the operator puts it through without a user prompt.[2] If the call is collect, the operator "determines" that the recipient will be asked to accept the charges. The operator has "determined" whether a "request" requires "acceptance of a user prompt." The only difference is the identity of the requester. Here, the generic references to a telephony network and an application are not sufficient to render the claim patentable.

The Federal Circuit has previously determined that abstract claims, which included a "routing system. . . [containing] a central processor coupled to a communications medium . . . , remote credit bureau terminal devices, and remote funding source terminal devices," were nevertheless unpatentable. *Dealertrack*, 674 F.3d at 1319, 1333-34. The Federal Circuit explained that "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Id.* at 1333. This is because, "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

---

[2] Of course, claim 21 requires no action.

9

> The key to this inquiry is whether the claims tie the otherwise abstract idea to a specific way of doing something with a computer, or a specific computer for doing something; if so, they likely will be patent eligible, unlike claims directed [to] nothing more than the idea of doing that thing on a computer. While no particular type of limitation is necessary, meaningful limitations may include the computer being part of the solution, being integral to the performance of the method, or containing an improvement in computer technology.

*Netgear, Inc. v. Ruckus Wireless, Inc.*, 2013 WL 5436641 at *7 (D. Del. Sept. 30, 2013) (quoting *CLS Bank Int'l. v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1302 (Fed. Cir. 2013) (en banc) (Rader, C.J., concurring and dissenting) (emphasis omitted), *aff'd*, 573 U.S. ___, 2014 WL 2765283 (June 19, 2014)). Furthermore, even if the patent requires "some physical steps . . . (e.g., entering a query via a keyboard, clicking a mouse)," that alone will also not confer patentability. *CyberSource Corp. v. Retail Decisions*, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011). Here, a computer is not an integral part of the claim. A person can easily perform the claimed steps.

The Plaintiff argues that the cases to which Defendants cite are primarily business method patents, whereas claim 21 is grounded in a particular technological context. (D.I. 190 at p. 16). The Plaintiff, citing *Ultramercial*, contends that the '694 patent is "quintessentially a telecommunications patent, and the fact that the claims include making a conditional decision does not render them patent ineligible." (D.I. 190 at p. 17). As an initial matter, claim 21 does not "include making a conditional decision;" it is "making a conditional decision." There is nothing else that claim 21 requires. In any event, in *Ultramercial* the Federal Circuit found that the claim was patentable in part because the patent claimed a "particular internet and computer-based method for monetizing copyrighted products." *Ultramercial*, 722 F.3d at 1350. Furthermore, the Federal Circuit found that "the claim [in *Ultramercial*] appears far from over generalized, with eleven separate and specific steps with many limitations and sub-steps in each category." *Id.* at

10

1352-53. Finally, the steps recited in *Ultramercial* were more than "token pre- or post-solution steps," *i.e.*, "they are central to the solution itself." *Id.* at 1347, 1352. Here the patent fails to limit claim 21 beyond the abstract idea, other than vaguely referring to a "telephony network" and an "application." This is not a practical application with concrete steps, and thus is far less patentable then what was claimed in *Ultramercial*.

I would be remiss if I did not mention the Supreme Court's latest ruling on this issue. While I do not believe that *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, 2014 WL 2765283 (June 19, 2014), substantively changed any of the legal rules I have applied, I believe it further supports my conclusion that claim 21 is unpatentable. After invalidating the method claims, the Court turned to the corresponding system claims, which recited "specific hardware configured to perform specific computerized functions." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, at ___, 2014 WL 2765283, *12. The Court was not persuaded that the hardware was sufficient to confer patentability because "what petitioner characterizes as specific hardware—a 'data processing system' with a 'communications controller' and 'data storage unit,'... is purely functional and generic. Nearly every computer will include a 'communications controller' and 'data storage unit,' capable of performing the basic calculation, storage, and transmission functions required by the method claims. As a result, none of the hardware recited by the system claims 'offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment,' that is, implementation via computers." *Id.* If specific hardware was not enough to transform system claims into patentable subject matter, then the reference to a "telephony network" in claim 21 is insufficient to transform a decision into a patentable idea.

11

Thus claim 21 of the '694 patent is directed towards an unpatentable abstract idea. The evidence is clear and convincing that claim 21 is invalid under 35 U.S.C. § 101.

## IV. CONCLUSION

For the reasons above, Sprint's Motion for Partial Summary Judgment that the Asserted Claims of U.S. Patent No. 6,873,694 are Invalid Under 35 U.S.C. § 101 (D.I. 151) is granted. An appropriate order will be entered.